## 60044. COCHRAN v. THE STATE.

BIRDSONG, Judge.

In *Cochran v. State,* 151 Ga. App. 478, 479-481, 485 (260 SE2d 371), we remanded the issue of discrimination in grand and traverse jury composition for completion of the record and further determination. In that decision, we adhered to the ruling in *Barrow v. State,* 239 Ga. 162, 165 (236 SE2d 257), that to make out a prima facie case of discrimination, the appellant must prove that an "*opportunity for discrimination* existed from the source of the jury list, and . . . that use of that infected source produced a *significant disparity* between the percentages found present in the source and

those actually appearing on the grand and traverse jury *panels.*" (Latter emphasis supplied.) Since the source for jury lists in this case was the voter registration list in Sumter County, and the defendant argued that opportunity for discrimination existed in the voters' list itself (see *Cochran,* supra, p. 480), we held it was error to refuse to allow defendant to call the jury commissioners as witnesses to explain the "relatively small" percentage (18.1%) of blacks on the grand jury list in comparison to the 39% of blacks in total population.

On remand and after further hearing in accordance with direction of this court, the trial court found as follows: "[T]his court finds (using round figures) that the population of Sumter County is approximately thirty-nine percent (39%) black, that the lists of registered voters used by the Jury Commissioners in 1976 was comprised of twenty-nine percent (29%) black voters, that the traverse jury box constituted by the Jury Commissioners in 1976 was 27.6 percent black and that the Grand Jury list so established was comprised of 18.11 percent black persons; also, that there were 12,187 registered voters in Sumter County of whom 3,608 were black, while 8,579 were white. The Court further finds that the list of registered voters was used exclusively as the source of the selection of jurors, also that this list is the most comprehensive list of citizens of any list in Sumter County, also that the Jury Commissioners determined the number of voters desired to be placed upon the jury list and thereafter systematically placed there upon every fourth voter on the list, dropping down to the next name in the event the person was disqualified for any reason and taking care to insure that females and blacks were adequately represented as a class. The Court further finds that the Jury Commissioners took into consideration provisions of Ga. Code Ann. Sect. 59-106 in trying to select 'the most experienced, intelligent and upright citizens' to serve as Grand Jurors. The court finds that one of the Jury Commissioners, Willie Cooper, is a black man, further that the Commissioners utilized the services of Dave Jackson, a black man employed at the Americus Post Office, also the services of the late Jimmy Hargrove, who at that time was a prominent black citizen who had retired as a county employee but still was active in courthouse affairs, also the services of Homer Smothers, a prominent and highly successful black farmer in the county. From the testimony, this Court finds that there was no evidence of any discrimination, either systematically or otherwise, as to any black person whatsoever, in fact, the testimony was unanimous that the question of race did not enter at all into the selection process utilized for the constitution for the jury list. The fruits of the labors of the Jury Commissioners amply demonstrates

their impartiality in that the jury which convicted the Defendant was comprised of six (6) white females, three (3) black females, and three (3) black males. The Grand Jury which indicted the Defendant was comprised of fourteen (14) males and nine (9) females, of whom there were eighteen (18) whites and five (5) blacks.

"ACCORDINGLY, it is the finding of this Court that the Defendant has failed to establish that there was any discrimination utilized in the establishment of either the Traverse Jury list or the Grand Jury list. . . THEREFORE, the Motion to Quash the Indictment, also the Challenge to the Array of the Grand Jury . . . is hereby over-ruled [sic] and denied."

In this appeal from that ruling, appellant urges that the trial court committed prejudicial error in denying his motion to quash the indictment and to challenge the array of the grand jury. Appellant argues that the "alarmingly high" disparity in this case (54%, see *Cochran,* supra, p. 479) is clearly within the range held unacceptable by this court in *Gould v. State,* 131 Ga. App. 811 (207 SE2d 519). We held in the first appearance of this case that this disparity is "amply 'significant' to authorize an inquiry into whether an '*opportunity for discrimination* existed from the source of the jury list' " (*Cochran,* supra, p. 480).

If there were such opportunity for discrimination, then with the proof that it resulted in "significant disparity" on the grand jury panel, the appellant has made out a prima facie case of discrimination in the jury selection process, and the state then has the burden to prove harmlessness. *Cochran,* supra, p. 481. However, in this case we find that the evidence supports the trial court's finding of facts and the trial court did not err in finding that the defendant failed to establish discrimination in selection of the grand jury panel. The Supreme Court actually held in *Pass v. Caldwell,* 231 Ga. 192 (200 SE2d 720) from which the statements in *Barrow* are drawn, that "[i]t was held in United States v. Hyde, 448 F2d 815, 824 that the defendant always has the burden of showing jury discrimination. Evidence of 'spectacular' underrepresentation meets the burden, making a prima facie case of discrimination. The burden of going forward then shifts to the government to explain the figures in a non-discriminatory way. The requirements for making out a prima facie case of jury discrimination are two-fold. First, appellant must prove that an opportunity for discrimination on account of race existed on the grounds that the source from which the potential jurors was drawn was racially biased, and second, that the use of such an 'infected source' produced a significant disparity between the percentages of blacks found present in the source and those actually appearing on appellant's grand and petit jury panels. Whitus v.

Georgia, 385 U. S. 545 (87 SC 643, 17 LE2d 599); Wright v. Smith, 474 F2d 349, 351 (5th Cir. 1973)." A prima facie case of jury discrimination is thus made out not by "significant disparity" alone, or by "significant disparity" and mere "opportunity for discrimination," but by proof that an infected source provided opportunity for discrimination and that *the use of that infected source produced a significant disparity* between the blacks in the source and *"those actually appearing on appellant's grand . . . jury panels."* (Emphasis supplied.) *Pass,* supra. We point out in this case, as the similar situation was pointed out in *Pass,* supra, that the percentage of blacks in Sumter County is 39%, but this is not the percentage of those eligible to be selected for grand jury. The number of presumptively eligible grand jurors of the black race in Sumter County is not known from the record, but that number will definitely be smaller in percentage than 39%, just as that of eligible white persons would be smaller than the whole. In this case, 18.1% of the grand jury venire is black, as opposed to an eligible group of blacks comprising something less than 39% of the total population. Moreover, the grand jury panel which indicted appellant was composed of 18 whites and 5 blacks, or 28% black membership, as compared to something less than 39% black population in the county.

The method by which the grand jury list was composed in this case was by a "neutral procedure," *Barrow,* supra, p. 166, inasmuch as the evidence supports the trial court's finding that there was no systematic exclusion of blacks from the grand jury. *State v. Gould,* 232 Ga. 844 (209 SE2d 312); *Sullivan v. State,* 225 Ga. 301, 303 (168 SE2d 133). Appellant did not establish purposeful discrimination in the selection process, nor, moreover has appellant established a significant disparity between those eligible for grand jury service and those chosen. *Pass,* supra, p. 193. He therefore fails to establish a prima facie case of jury discrimination.

We point out, as the trial court did, that the jury which convicted appellant was composed of equal numbers of black persons and white persons, or proportionately 11% more black persons than, per ratio, live in the county.

*Judgment affirmed. Deen, C. J., and Sognier, J., concur.*

SUBMITTED JUNE 2, 1980 — DECIDED JULY 10, 1980 —
REHEARING DENIED JULY 22, 1980—

Donald L. Lamberth, for appellant.
Claude N. Morris, District Attorney, Howard S. McKelvey, Jr.,

*Assistant District Attorney,* for appellee.