BASHLOR et al. v. BACON et al., jury commissioners.

No. 6986. APRIL 10, 1929.

C. L. Purvis and J. P. Dukes, for plaintiffs.

P. M. Anderson, for defendants.

GILBERT, J. C. J. Bashlor and others sought mandamus to compel A. S. Bacon and others, as jury commissioners, to revise the jury-lists of Bryan County. The petition alleged that on August 2 and 3, 1928, the defendants attempted a revision that was illegal in that it was undertaken less than two years from the preceding one; that said commissioners were not composed of "six discreet persons," but only five, one of these having withdrawn at the outset of the revision, on the ground that the commissioners were not proceeding fairly and impartially or legally; that the commissioners did not have before them at the time the tax-digest for 1928, and hence were unable to "select from the books of the tax-reeciver upright and intelligent men to serve as jurors:" that "hatred, malice, and religious prejudice entered the minds of said jury revisers," as a result of which they excluded from both grand-jury and traverse-jury boxes all Jews living in said county, though said persons were qualified as taxpayers and had before served as jurors; and that three of said commissioners were disqualified to act, being respectively a justice of the peace, nominee for tax-receiver, and tax-assessor. By amendment it was further alleged that the action of said commissioners was illegal, because one of their number was not present not being advised of the meeting, which was not held at the proper or legal time; and that six names were entered on said jury-lists for grand jurors, when they did not appear on said tax-digest at all, and when they were names merely of poll taxpayers and not payers of property tax. The prayers were for mandamus

to compel a new revision to cure all of the various irregularities alleged, including the purging of said lists of disqualified persons.

The defendants demurred generally and on the grounds that the petition set out no facts to uphold the allegations as to lack of six discreet persons, of tax-digest, or as to time the revision was had; that the names of the Jews alleged to have been omitted were not set out, and the names of those alleged to have been illegally included were not set out. The court sustained the demurrer as to the allegations relating to the time the revision was had, that six discreet persons did not act, and that the tax-digest was not on hand. The petitioners excepted pendente lite to this judgment and assign error thereon. General denial was set up by answer of the defendants, except that they admitted that the revision they undertook was had three days before the time specified by law, but they insisted that the law fixing the first Monday in August as the date was directory only, and that they had substantially complied with the law. They admitted they did not have the 1928 tax-digest, as it was not completed, but did have the 1927 digest, which was substantially the same. All hatred of Jews or discrimination against any class of taxpayers was denied. Defendants answered that the official commission of one of the jury commissioners as a notary public expired before the revision complained of took place, that another was a nominee only, and that a third was in fact tax-assessor; but they denied that any of these things disqualified either to act as a jury commissioner. They contended that petitioners could not have mandamus against them to do the very official act that the petitioners declared them incapacitated to do. On a hearing it was sought, by introduction of witnesses, to establish the allegations of the petition, and the defendants introduced witnesses to contradict the same. The jury rendered a verdict for the defendants. The petitioners moved for a new trial generally; and because the court failed to give in charge to the jury sections 811 and 813 of the Penal Code; and because the court did charge that the commissioners could not exclude Jews as a class or because of race or other prejudice, but could exclude any person, individually, for the usual reasons obtaining in such cases, the complaint being that there was no evidence as to excluding anybody individually; and because the court charged that the only question in the case was whether Jews had been excluded as a class, or because of hatred

or religious or other prejudice, the complaint being that the jury was thus not allowed to consider the whole case. The motion was overruled, and the petitioners excepted.

"All official duties should be faithfully fulfilled; and whenever, from any cause, a defect of legal justice would ensue from ·a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights." Civil Code (1910), § 5440. Under undisputed evidence in this case the jury commissioners who revised the jury-lists in 1928 for Bryan County acted under gross misapprehension of their official duty. Such act goes to the very root of the jury system as a branch of the administration of justice. It would be difficult, if not impossible, to overestimate the importance of having our jury-lists made up in a spirit of absolute fairness and in adherence to the law. If trial by jury ever fails, it will likely be due to causes which are apparent in this record. Jury revisers should perform their duties with a hallowed devotion to providing such jurors as are contemplated by law. In the discharge of these duties no personal favoritism or dislike should be countenanced. Care should be used that only men of the highest character are called to perform such duties. There should be no doubt as to these qualifications, lest it breed suspicion and distrust in the administration of justice. In this case it appears without conflict that five of the appointed revisers met on the day selected to make up jury-lists. One was not notified, and was not present. Also, that one of the five withdrew after the meeting opened, because of dissatisfaction with the arbitrary methods of his associates. Four only remained, a bare quorum, to complete the revision. Of this four, one was a notary public and ex-officio justice of the peace, whose term expired May 16, 1928, next preceding this meeting in August. Another of the four was a nominee of the Democratic Party for the office of tax-receiver, and still another was a tax-assessor. Penal Code (1910), § 813, provides that "there shall be a board of jury commissioners, composed of *six discreet persons,* who are not practicing attorneys at law nor *county officers*" (italics ours). Under this section, the tax-assessor was disqualified to act on said board, and this left only three others to perform the services required to be performed by six, and of these the justice of the peace was disqualified on the face of the record. It does not appear in

the record that any successor to the justice of·the peace had been appointed and qualified. In these circumstances the holder of the office whose term expired May 16, 1928, will continue to hold office. Civil Code (1910), § 261; *Walker* v. *Ferrill,* 58 *Ga.* 512; *Shackelford* v. *West,* 138 *Ga.* 159 (74 S. E. 1079). In *Wright* v. *State,* 124 *Ga.* 84 (52 S. E. 146), Chief Justice Fish said: "It is contended that a justice of the·peace is a county officer, and, for the purposes of this decision, this contention may be admitted. We assume, then, that Carlton, the justice of the peace, was, while holding that office, ineligible for appointment as a jury commissioner." Some doubt was thrown upon the question whether a justice of the peace was a county officer, and it may with reason be said that the language of Chief Justice Fish just quoted was obiter in that case, though the decision was a unanimous one. In *Long* v. *State,* 127 *Ga.* 286 (56 S. E. 424), which was not unanimous, it was said that a justice of the peace was an "officer of the State." But it was also said: "A justice of the peace sometimes performs functions which, under other circumstances, are performed by a county officer. While a justice of the peace might possibly be classed as in a certain sense a county officer, this is really not the true way of designating the office that he holds." At any rate there was doubt as to qualification of this justice of the peace during most of his term, assuming that he had served a regular term as reviser. Counting the justice of the peace as eligible, there were only three eligible commissioners. This is less than a quorum.

From what is said above, we arrive at the conclusion that the revision in this case was not made by a quorum of lawfully qualified revisers. However, there are other reasons why the revision was not lawful. In *Davis* v. *Arthur,* 139 *Ga.* 74 (76 S. E. 676), it was ruled that under the constitution and laws of this State it is the sound, legal judgment of jury commissioners which controls in making up lists of grand and traverse jurors; and it was said: "If the jury commissioners had failed to act at all, it is clear that they could be compelled to act, and the appropriate remedy would be by mandamus to compel official action. If they should act in palpable violation of the law, that would be equivalent to non-action. . . It is also said that the remedy of mandamus is not available to control the performance of a discretionary act. That is true unless the discretion is grossly abused. But an official may be made to

perform a discretionary act; or if in the attempted performance of a discretionary act the official grossly abuses his discretion, so as to amount to a failure to do the act as the law requires, mandamus is a proper remedy. State *v.* President and Board of Directors, 134 Mo. 296 (56 Am. St. R. 503, 35 S. W. 617)." *Richmond County* v. *Sleed,* 150 *Ga.* 229, 233 (103 S. E. 253) ; *Wilkerson* v. *Rome,* 152 *Ga.* 762, 783 (110 S. E. 895, 20 A. L. R. 1334) ; *Bryant* v. *Board,* 156 *Ga.* 688 (2 *a*) (119 S. E. 601). The undisputed facts of the present case compel the conclusion that the revisers did not exercise that sound, legal discretion imposed by law, and that their acts consisted of such gross abuse of their duty as to amount to no lawful action. Such facts were that numbers of names were excluded which were those of honorable, upright, and intelligent taxpayers, while others were included which did not appear on the tax-digest. The defendants explain that such was by accident, but several of the largest taxpayers of the county were omitted. Wealth is not the criterion of honesty and intelligence; but where such taxpayers were admittedly upright and honest and represented large interests in county affairs, such omission would appear to constitute an unwarranted disregard of the considerations imposed by law. It appears that a motion was made and unanimously adopted that all Jews were to be omitted, though it is further shown that only four persons were thus affected. Some, at least, of these appear to have been upright, honest, and eligible persons, and one of them was the third largest taxpayer in the county. There is also some evidence tending to show personal prejudice against one of these Jews. On the other hand, the revisers testified they did not exclude any Jew because of racial or other prejudice. Conceding this without question, the adoption of a motion to exclude all Jews, regardless of their qualifications, shows in itself a gross abuse of the required legal discretion. We can not escape the conclusion from the evidence with regard to a number of other names that their qualifications were arbitrarily decided.

Under the facts, therefore, it was error to refuse a mandamus absolute. It appearing on the hearing that a number of the revisers were legally ineligible, the court should have appointed others legally qualified to fill the vacancies; and also have ordered a mandamus absolute, requiring a revision according to law. We have not dealt with the question whether the revision was premature, because

under the above ruling that question becomes immaterial. We merely add the following: "The inclusion in the jury-list of five names which did not appear on the tax-receiver's list is not such a vital irregularity as to invalidate the whole revision." *Davis* v. *Arthur,* supra. It was error to refuse a new trial.

*Judgment reversed. All the Justices concur.*

BECK, P. J., concurs in the judgment.