## 52419. GEORGIA INTERNATIONAL LIFE INSURANCE COMPANY v. BONEY.

MARSHALL, Judge.

Georgia International Life Insurance Company (hereinafter Georgia International) brings this interlocutory appeal on a certificate of immediate review granted by the trial court and the grant of a motion for such an appeal by this court.

Peter Boney, now deceased, negotiated two loans with his local bank. Each of these loans was secured by credit life insurance issued by Georgia International. Within a year of the issuance of the two insurance policies, Peter Boney suffered a fatal gunshot wound. The administrator (appellee herein) of Peter Boney's estate sought recovery of the loan amounts covered by the insurance. Georgia International denied liability asserting that Peter Boney's death was by suicide and its insurance contracts by express terms limited coverage in such cases to a return of the premiums. Georgia International has paid the premiums into the registry of the court.

There are three issues involved in this appeal: (1) whether a note left on the kitchen table by the decedent shortly before his death is a confidential communication between husband and wife; (2) whether the wife's testimony as to conversations with her husband and her observations of his conduct and appearance were also confidential communications; and (3) whether certain reports and documents were protected from discovery by the work products rule. *Held:*

1. After Peter Boney's administrator brought suit against Georgia International on the two policies, a deposition was taken of the decedent's wife. During the deposition she stated that, just before the fatal gunshot was fired, her husband went into the backyard with a pistol and that, on his way out, he directed her attention to a note on the kitchen table. The wife was asked numerous questions during the deposition concerning the note as well as questions concerning her husband's actions, conversations and appearance on the night of his death. The administrator objected to the admissibility of the note

and of any of her husband's actions, conversations or expressions as observed by her on the ground that they were privileged communications, and had not been waived by Peter Boney. The trial court, in a preliminary hearing, ruled that the letter or note and all conversations between Peter Boney and his wife were inadmissible.

As to the note, Georgia International contends that Peter Boney must have known that this note would have been examined by persons other than his wife, therefore he waived the privilege of confidentiality. Pretermitting the obvious assumption of suicide, we conclude that the trial court did not err in holding the note inadmissible as a confidential writing. Our statute makes a writing from husband to wife concerning marital and family relationship incompetent and inadmissible. Code § 38-418. It does not simply proscribe the channel though which the evidence reaches the jury, but makes the evidence itself inadmissible. *McKie v. State,* 165 Ga. 210 220 (140 SE 625). There can be no doubt that a note concerning family relationships left on the kitchen table in the evening, in a single family dwelling in which the wife is the only adult occupant, and to which the husband called the wife's attention, is intended as a confidential communication and is absolutely protected.

Georgia International also contends that even if the note was privileged, the privilege was waived by the administrator when he gave the note to the wife and was waived by the wife when she voluntarily during the deposition gave the note to the attorney for Georgia International. There can be no question that neither the administrator nor the wife waived the privilege of confidentiality, assuming arguendo, that under limited circumstances they might. In this case the testimony of the administrator was that he did not wish to release the note but because the note was the property of the wife, he did relinquish the note to her. The privilege inures to the communicator, survives death and is permanent. In *McCord v. McCord,* 140 Ga. 170 (78 SE 833), it was held that the privilege was intended to secure freedom from apprehension in the mind of the one desiring to communicate. Therefore, the privilege belongs to the communicating one. Moreover, the death or divorce of the

other member does not affect the policy of prohibition. *Lingo v. State,* 29 Ga. 470, 483. See *Boggess v. Aetna Life Ins. Co.,* 128 Ga. App. 190, 192 (196 SE2d 172). More directly in point as to the note in this case, it was held in *McKie v. State,* 165 Ga. 210, supra, pp. 219, 221, that letters from a husband to his wife, or from her to him, are inherently and absolutely privileged communications, and are not admissible in evidence for or against the husband or wife, no matter in whose hands they may be. Since the privilege belongs to the communicator, it has been held that the privilege cannot be waived by the administrator (Bowman v. Patrick, 32 F 368, cited in *McKie v. State,* 165 Ga. 210, supra, p. 219) nor by the surviving spouse, since communications between husband and wife survive death and are protected forever. *Lingo v. State,* 29 Ga. 470, supra.

Neither the administrator nor the wife had the authority under the circumstances of this case to waive that privilege following the death of the writer of the note. *McKie v. State,* supra; *Lowry v. Lowry,* 170 Ga. 349, 352 (153 SE 11). We conclude the court correctly ruled as inadmissible the note from the deceased husband to his wife.

2. As to the questions and answers contained in the wife's deposition, a more difficult problem is presented. The deposition extends for some 42 pages. Objections were made and sustained to questions of the wife's observations of what her husband did, his appearance, expressions, and condition, as well as what he said to her. Georgia International contends that most, if not all, of the wife's testimony in this area would be admissible because it would not be protected by the confidential communications privilege in that her husband's conduct was neither confidential nor a communication.

This subject has infrequently arisen in the reported cases in Georgia. In the early case of *Jackson v. Jackson,* 40 Ga. 150, 153 (1869), it was held that while Mrs. Jackson was a competent witness to testify concerning a promissory note upon which the suit was based, she should not have been allowed to testify as to any fact which came to her knowledge by reason of the confidential relation of husband and wife, during her coverture, as the

wife of her deceased husband. The underlying basis for this privilege of privacy was set forth in the early case of *Stanford v. Murphy,* 63 Ga. 410, 416. It was there concluded that any confidential communication from husband to wife may not be divulged in any court, for the reason that the fact communicated was disclosed in the privacy of the marital relation. The peace of the household might be disturbed if it were divulged. Upon precisely the same principle, any knowledge acquired by the wife on account of the trust confided in her by her husband of any fact whatever should be excluded, whether the husband told it to her out of his mouth or showed it to her in a letter, or pointed it out with his hand, or locked it up and gave to her lone access to it by entrusting her with the key.

As pointed out by Georgia International, the privilege is not all-inclusive. Though the rule establishes the wife as an incompetent witness for or against the husband in regard to any information derived from his confidence in her, where there is nothing to indicate that the knowledge was derived from any special confidence which one spouse reposed in the other, or that there was any occasion for the one spouse to make to the other any confidential communication concerning the matter, the knowledge gained is not privileged. See *Macon R. &c. Co. v. Mason,* 123 Ga. 773, 780 (7) (51 SE 569). Only confidential communications between husband and wife are excluded; and this principle does not prohibit one of the married pair from testifying to communications which are not privileged. *Lowry v. Lowry,* 170 Ga. 349, 352, supra.

Wigmore's treatise on Evidence recognizes the incorporation into (as well as the exclusion from) the area of privilege, communicative acts which are not spoken or written words. VIII Wigmore on Evidence, 657, § 2337, Husband - Wife Communications. It is there provided that in some cases — those in which there is something in the way of an invitation by the husband of the wife's presence or attention or there are other indications that he intends for her to acquire knowledge of his act — the act is as much a communication as would be his words to her describing the act. Such an act falls within the policy of the privilege. However, in other cases, — those in which the act is done

solely for the sake of doing it, the indications being that the husband is indifferent to the presence of the wife — there is no communication. In such cases the privilege should not be allowed to deprive the court of the evidence.

Within the light of the above principles, we turn now to the questions presented by this case pertaining to the husband-wife communications. Any conversation or act performed by Peter Boney which is attributable to the husband-wife relation, i.e., that which might not be spoken or done openly in public as tending to expose personal feelings and relationships or tending to bring embarrassment or discomfiture to the participants if done outside the privacy of the marital relation, is privileged. Impersonal conversations with her husband, or observations of Mrs. Boney of the appearance of her husband or of his actions which she gained solely by casual observation or which were performed by him in disregard of, or indifference to, her presence would not be a part of the marital relation. We impose this caveat. Where *Lowry v. Lowry,* 170 Ga. 349, supra, speaks of non-privileged communications, we are satisfied that category relates to husband-wife conversations through third parties or in the presence of third parties (*Knight v. State,* 114 Ga. 48, 49 (39 SE 928)); where the communication constitutes a ground of action by one spouse against the other (*Bishop v. Bishop,* 124 Ga. 293, 296 (52 SE 743)); or where the conversation was of an impersonal nature spoken or performed without the special confidence one spouse reposes in the other in the marital relation (*Macon R. &c. Co. v. Mason,* 123 Ga. 773, supra).

We further note that certain of the exclusions of Mrs. Boney's testimony were based not upon the fact that these were privileged communications but because the answers were conclusions or were hearsay. The enumerations of error make no complaint concerning these rulings. The first instance of exclusion addressed as error by Georgia International allegedly was based upon privileged communication, whereas the court apparently ruled that the answers were inadmissible conclusions. We do not address the propriety of that ruling on the ground of improper conclusion since the issue has not been raised

before us.

On the basis of the above, the trial court erred to the extent that it excluded *all* evidence relating to Mrs. Boney's observations of her husband's words, actions, and demeanor to include both privileged and non-privileged communications as well as observations not entitled to the privilege. Should this case come before us again following trial, we can consider specific questions and answers of a disputed confidential nature.

3. In its third enumeration of error, Georgia International urges that the trial court erred in ordering the production of the work product of its employee and agents arising out of investigations leading toward the litigation of the issue now before the court. The record shows that following Peter Boney's death the administrator sought the discovery of the investigative reports made by the employee and agents of Georgia International. When these reports were not forthcoming, the administrator moved the trial court for an order to produce. Georgia International defended its refusal to release the reports on the ground that the administrator had not alleged, shown nor proved a substantial need for the reports, nor that undue hardship would be caused if the administrator sought to obtain the same information from other sources. The trial court ordered Georgia International to deliver these reports to the administrator.

Georgia International relies upon Code Ann. § 81A-126 (b)(3), which provides, in pertinent part, that ". . . a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

As we read the language of this subsection, it is

obvious that documents, statements and other tangible items of evidence developed by one party in preparation for litigation are discoverable by the other party only in carefully limited circumstances. The moving party must show affirmatively that he has a substantial need for such evidence in the preparation of his case and that it would cause an undue hardship upon him to develop that evidence by means other than extraction from the files of the opposing party. If the trial court is satisfied that the required showing has been made, the trial court may order the production, after an in-camera examination (or other acceptable agreement between the parties) with a view toward protecting against the disclosure of mental impressions, conclusions, opinions or legal theories.

As far as this court can discern, there are no Georgia cases interpreting the required showing of "substantial need" or "undue hardship." The editorial note following Code Ann. § 81A-126 indicates however that the Acts of 1972, page 510, entirely superseded the former section, the purpose being to conform the discovery provisions of the Civil Practice Act to the 1970 amendments to the Federal Rules of Civil Procedure. Looking to the persuasive value of federal decisions analyzing these expressions, we find that the federal courts have required the moving party to establish a "substantial need" and show "undue hardship" in order to breach the panoply of protection usually afforded a party's work product. In Almaguer v. Chicago, Rock Island & Pac. R. Co., 55 FRD 147 (D Neb. 1972), the court closely examined the need and hardship evidence offered by the moving party and found the showing to be inadequate. To the same effect see Prudential Ins. Co. of America v. Marine Nat. Exchange Bank, 52 FRD 367 (ED Wis. 1971); Fidelity & Deposit Co. of Md. v. Stefan Strauss, Inc., 52 FRD 536 (ED Pa. 1971).

In this case, this record shows nothing more than the bare assertion at one point in the motion to produce that ". . . the documents are necessary to the preparation of Plaintiff's case, and that such information is not available to Plaintiff by any other means." There is no offering or other showing to substantiate a "substantial need" or that independent investigation would cause the administrator an "undue hardship." In the absence of some showing to

satisfy the required test, the administrator has failed to carry the day. *Ford Motor Co. v. Hanley,* 128 Ga. App. 311, 315 (196 SE2d 454). It follows therefore that, in the absence of such showing, the trial court erred in ordering the discovery of the written reports of claims agents or Retail Credit Company employees to the extent requested in paragraph (a) of the Administrator's Notice to Produce of January 26, 1976.

*Judgment affirmed in part and reversed in part. McMurray and Smith, JJ., concur.*

SUBMITTED JULY 6, 1976 — DECIDED SEPTEMBER 16, 1976.

*Smith, Shaw, Maddox, Davidson & Graham, Groze Murphy, Jr.,* for appellant.

*Farrar & Farrar, A. A. Farrar, Boney & Boney, William U. Hyden, Jr.,* for appellee.