70718. CHADWICK v. THE STATE.
(335 SE2d 674)

CARLEY, Judge.

Indicted on and convicted of three counts of child molestation and one count of enticing a child for indecent purposes, appellant appeals from the judgment entered on the jury verdict and the denial of his motion for new trial.

1. Appellant contends that the trial court committed reversible error by overruling his challenge to the array of both the grand and petit juries. The challenge was premised upon assertions that a member of the Board of Jury Commissioners of Walker County, Mr. Ralph Phillips, was also a "county officer" in contravention of OCGA § 15-12-20 (a).

Appellant was first charged by an arrest warrant issued July 1, 1984, and indictments were returned at the next term of the grand

jury on November 2, 1984. The motion challenging the grand and petit juries was filed November 27, 1984. We have been unable to find any order of record overruling appellant's challenge and none has been cited to us by counsel. In any event, " '[a] challenge to the array of grand jurors is waived unless timely filed. As stated in *Sanders v. State*, 235 Ga. 425 [(219 SE2d 768) (1975) (cert. den. 425 U. S. 976 (96 SC 2177, 48 LE2d 800) (1976))]: "In order for such a motion to be entertained by the trial court, it must be made prior to the return of the indictment or the defendant must show that he had no knowledge, either actual or constructive, of such alleged illegal composition of the grand jury prior to the time the indictment was returned; otherwise, the objection is deemed to be waived. [Cits.]" ' [Cits.]" *Sullivan v. State*, 246 Ga. 426-427 (271 SE2d 823) (1980). See also *Wright v. State*, 165 Ga. App. 790, 791 (5) (302 SE2d 706) (1983). The record demonstrates that the defect alleged by appellant was a matter of public record since the time of Mr. Phillips' appointment on June 20, 1983. Moreover, on May 24, 1984, in the context of a hearing conducted in other criminal cases, the partner of counsel who would subsequently represent appellant raised the issue of Mr. Phillips' qualifications. The motion on behalf of appellant, however, was not filed until November 27, 1984, three weeks after indictment. "Georgia law requires that objection to the composition of the grand jury be made at the earliest practical opportunity. [Cits.]" *Thomas v. State*, 239 Ga. 734, 735 (238 SE2d 888) (1977). See also *Sullivan v. State*, supra at 428.

Moreover, even assuming that as to the array of the grand jury the challenge was timely made, as was true with regard to the challenge to the petit jury, the record demonstrates that as to neither jury was the challenge erroneously overruled on the merits. "Even if a person be ineligible to hold the office of jury commissioner, yet if he is appointed to such office and acts therein, he is, while so acting, a jury commissioner de facto, and the official acts of the board of jury commissioners wherein he participated are valid, and can not be collaterally attacked upon the ground that such person was incompetent to hold the office of jury commissioner." *Wright v. State*, 124 Ga. 84 (1) (52 SE 146) (1905). "It follows that there was no error in overruling the challenge to the array of jurors." *Wright v. State*, supra at 85.

2. The State called Cherie French, appellant's former wife, to testify. The trial transcript reveals that no objection was made when Ms. French was called to the stand and that she testified at some length before a hearsay objection was made. After requesting removal of the jury, defense counsel also moved for a mistrial "based upon the fact that the Assistant District Attorney has asked that question of [Ms. French] and has had her indicate that she does not know, or is not willing to say what it was, thereby invoking her privilege against

giving testimony that would be damaging to her husband." The assistant district attorney stated in his place that he "had no knowledge" that Ms. French wished to invoke the privilege and contested that any privilege existed. Upon questioning, Ms. French testified that she had divorced appellant, but that she had "had a change of heart" and that she loved and wished to remarry him. Although she "didn't come right out and say that," Ms. French thought the assistant district attorney "recognized" that she did not want to testify against appellant. The trial court denied appellant's motion for a mistrial, which ruling appellant asserts was erroneous.

OCGA § 24-9-21 (1) establishes that communications between husband and wife are "excluded on grounds of public policy." However, "only confidential communications between husband and wife are excluded; and this principle does not prohibit one of the married pair from testifying to communications which are not privileged." *Lowry v. Lowry*, 170 Ga. 349, 352-353 (153 SE 11) (1930). "[D]eath or divorce . . . does not affect the policy of prohibition. [Cits.]" *Georgia Intl. Life Ins. Co. v. Boney*, 139 Ga. App. 575, 576-577 (228 SE2d 731) (1976).

The spousal privilege established by OCGA § 24-9-23 concerns an entirely different matter. That statute addresses not the admissibility of evidence, but the very compellability of one spouse to become a witness for or against the other. Under OCGA § 24-9-23, the defendant's spouse is a competent but not compellable witness in a criminal case. Unlike the evidentiary prohibition of OCGA § 24-9-21 (1), the spousal privilege against compellability "ceases when the marriage is terminated by death or divorce." Green, Ga. Law of Evidence (2nd ed.), § 162. See also *Gentry v. State*, 250 Ga. 802, 803 (2) (301 SE2d 273) (1983) (witness and defendant "not married at the time of the trial. . . .").

Accordingly, Ms. French had no spousal privilege under OCGA § 24-9-23 to invoke at the time of appellant's trial, the two having been divorced. Notwithstanding her personal desire not to testify, she *was* a compellable witness. Even assuming that appellant's objection could be construed as an assertion of the evidentiary prohibition of OCGA § 24-9-21 (1), no error would be shown. The record clearly demonstrates that the question and Ms. French's answer which precipitated the objection did not concern a confidential *spousal* communication. Instead, the challenged inquiry and response involved a communication to Ms. French *by the victim*. The trial court did not err in denying appellant's motion for mistrial.

3. Appellant asserts that the trial court erred in ruling that the six-year-old victim was competent to testify. Prior to her testimony, the victim was questioned at length by the prosecution and the defense, as well as the trial judge, outside the presence of the jury.

Thereafter, the trial judge, noting that it was "a mighty close question," ruled the child competent to testify. Immediately after the child's testimony, and then again in the final charge, the trial court cautioned that the weight and credit to be given a witness of such tender years must be considered and determined by the jury.

"Where the trial judge examines a child as to its understanding of the nature of an oath, as was done in the instant case, and determines the child is competent to testify, the court's discretion, absent manifest abuse, will not be interfered with by this court. [Cits.] The determining factor in deciding competency of a child witness is not age, but the child's ability to understand the nature of an oath. [Cit.] It is not necessary that the child be able to define the meaning of an oath, but that she know and appreciate the fact that as a witness she assumes a solid and binding obligation to tell the truth when questioned at trial. [Cit.]" *Eastep v. State*, 170 Ga. App. 401, 402 (2) (317 SE2d 259) (1984). While the answers of the child in the instant case were not always fully responsive or consistent, "[i]nconsistency in a child's testimony does not render her incompetent to testify. [Cits.]; nor is it necessary for a child to understand the meaning of the word 'oath.' [Cit.]" *Sprayberry v. State*, 174 Ga. App. 574, 576 (1) (330 SE2d 771) (1985). "Once a child's competency has been thoroughly tested in court, it is within the sound discretion of the trial court whether or not to rule the child competent to testify as a witness. [Cits.] Because the trial court has had the opportunity to observe the child during the competency examination and because such observation provides material indicia of competency (or the lack thereof) which this court cannot glean from a cold record, we will upset the ruling of competency only when the record clearly shows that the child was not competent. . . . [Cits.] A further reason for the hesitation of appellate courts to interfere with competency rulings is that the trial court's ruling as a matter of law that the child is competent (see OCGA § 24-9-7 (a) . . .) is followed by the jury's independent determination of the child's credibility as a matter of fact. [Cit.] In the case at bar, the child could not say what an oath was, but she demonstrated that she knew the difference between truth and falsehood, that telling a lie was wrong and could result in punishment. She was subjected to a thorough and sifting cross-examination as well as questions propounded by the court in addition to the [S]tate's examination. We find that the requisites of [demonstrating competency were] amply satisfied." *Pope v. State*, 167 Ga. App. 328, 329 (306 SE2d 326) (1983). See also *Barnes v. State*, 173 Ga. App. 907 (1) (328 SE2d 583) (1985); *Walls v. State*, 166 Ga. App. 503 (1) (304 SE2d 547) (1983).

4. In his final enumeration of error, appellant contends that the trial court improperly allowed the State to impeach the victim, who

was the State's own witness. The record reveals that the victim equivocated under direct examination as to whether she had ever made a certain statement to policewoman Connie Ballew, which statement was incriminatory of appellant. The State then called Officer Ballew, who, over objection by defense counsel, was allowed to testify under the rule of *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982), that the victim had in fact made such a statement to her.

Under *Gibbons*, the testimony of Ms. Ballew was not merely impeaching of the victim's testimony. Her testimony was "*substantive evidence* of the guilt of [appellant]." (Emphasis in original.) *Gibbons v. State*, supra at 862. Appellant contends that to apply the *Gibbons* rule is unfair under the circumstances of the instant case, and he urges establishment of a rule whereby *Gibbons* would not apply to crime victims unless it can be shown that the victim has been subjected to improper influences or that the victim's testimony has changed for any other illegal or improper reason. However, such an interpretation of *Gibbons* has already been implicitly rejected. See *Brown v. State*, 175 Ga. App. 246 (333 SE2d 3) (1985). Both the victim and Officer Ballew were present at trial and both were subject to cross-examination. See *Gibbons v. State*, supra; *Worthy v. State*, 253 Ga. 661, 664 (4) (324 SE2d 431) (1985); *Burney v. State*, 252 Ga. 25 (1) (310 SE2d 899) (1984); *Oliver v. State*, 168 Ga. App. 477 (2) (309 SE2d 627) (1983). Officer Ballew's testimony was not erroneously admitted.

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 17, 1985 —
REHEARING DENIED OCTOBER 2, 1985 —

*William Davis Hentz*, for appellant.

*David L. Lomenick, Jr.*, District Attorney, *David J. Dunn, Jr.*, Assistant District Attorney, for appellee.