## A03A0470. LOPEZ v. THE STATE.
## A03A0471. MEDRANO v. THE STATE.
### (580 SE2d 668)

MILLER, Judge.

Tried together in a jury trial, Jesus Maria Lopez and Ruben Vega Medrano were both convicted on two counts of kidnapping and on two counts of aggravated assault. Lopez was also convicted of possessing a firearm during the commission of a felony. Lopez appeals in Case No. A03A0470, contending the court erred in failing to give his requested charge on false imprisonment, in denying his two motions for mistrial, and in denying his special demurrer to the indictment. In Case No. A03A0471, Medrano raises a single enumeration of error, arguing that the court erred in denying his motion for new trial that asserted ineffective assistance of counsel. We hold that neither appeal has merit and therefore affirm in both cases.

Construed in favor of the verdict, the evidence showed that Lopez, Medrano, and a compatriot drove to the residence of Cristobal Maciel to determine the whereabouts of a man who allegedly owed them money. The three men forced Maciel into their vehicle at gunpoint. They then approached a woman (Martha Rodriguez) about the whereabouts of the alleged debtor. When she replied she did not know his whereabouts, the three men used guns and physical violence to force her also into their vehicle. The woman's daughter saw the incident and called police.

Holding guns on the victims, the three men then drove around for three hours in search of the alleged debtor, repeatedly threatening to kill the victims if they did not lead the men to the debtor. To save their lives, Maciel offered to give the three men two cars to pay the alleged debt. Maciel used a cell phone to arrange to have two cars dropped off at a local gas station. Alerted to the arrangement, police rescued the hostages and arrested the three men when the men picked up one of the cars.

The three men were indicted on two counts of kidnapping, two counts of aggravated assault, one count of burglary, and one count of

possession of a firearm during the commission of a felony. Lopez specially demurred to all counts. At the trial of the three men, the above evidence was presented and only one of the defendants testified. Lopez claimed that no guns or force was used and that Rodriguez and Maciel came with the three men voluntarily (neither being held against his or her will) and freely decided to pay the debt with the two cars.

The court granted a directed verdict on the burglary count. The court instructed the jury on the remaining counts but refused to give Lopez's requested charge on false imprisonment, reasoning that no evidence supported such a charge. The jury found the three defendants guilty on all counts with the exception that Medrano was acquitted of the possession of firearm offense. Lopez and Medrano moved for a new trial, which the court after an evidentiary hearing denied. Lopez appeals in Case No. A03A0470, and Medrano appeals in Case No. A03A0471.

## Case No. A03A0470

1. Lopez first claims that the court erred in not giving his requested jury charge on the lesser offense of false imprisonment. He argues that if the jury believed his testimony that the two victims went with the three men voluntarily, "this would negate the element of holding them against their will [required for a kidnapping offense] and justify a charge on the lesser charge of false imprisonment."

This argument is nonsensical. Absent the element of holding the victims against their will, there is no crime of false imprisonment either. *Lucas v. State*, 183 Ga. App. 637, 639 (2) (360 SE2d 12) (1987). If there is no evidence raising the lesser offense, there is no need to give a requested charge on the lesser offense. *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994). Thus, where a defendant accused of kidnapping testifies that the victim accompanied him voluntarily, his testimony would warrant an acquittal of both kidnapping and the lesser offense of false imprisonment and would not justify a jury charge on false imprisonment. *Raysor v. State*, 191 Ga. App. 422, 423 (2) (382 SE2d 162) (1989).

Moreover, the evidence here showed that any detention of the victims was accompanied by the element of asportation. Accordingly, Lopez was either guilty of the offense of kidnapping or not guilty of any detention-related offense. See *Brown v. State*, 232 Ga. App. 787, 791 (2) (504 SE2d 452) (1998). Where the evidence shows either the commission of the completed offense as charged or the commission of no offense, the trial court properly refuses to charge the jury on a lesser included offense. Id.; accord *Peebles v. State*, 260 Ga. 430, 433

(4) (396 SE2d 229) (1990); *Cosby v. State*, 234 Ga. App. 723, 724-725 (3) (507 SE2d 551) (1998).

For these reasons, the court did not err in refusing to give the charge on false imprisonment.

2. Lopez contends that the trial court erred in denying his two motions for mistrial triggered by police testimony that possibly referenced interviews with the defendants. He claims that such references shifted the burden of proof to require the defendants to testify in their own defense. We hold that the trial court did not abuse its discretion in denying the motions for mistrial.

"Whether to grant a motion for mistrial is within the sound discretion of the trial judge, and a decision based on that discretion will not be disturbed on appeal unless abuse of discretion is shown. [Cit.]" *James v. State*, 270 Ga. 675, 677 (4) (513 SE2d 207) (1999). "When prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial." (Citation and punctuation omitted.) *Scruggs v. State*, 273 Ga. 752, 753-754 (2) (545 SE2d 888) (2001).

We hold that no prejudicial matter was presented to the jury and that the trial court did not abuse its discretion in finding that Lopez's right to a fair trial was preserved. The first reference to an interview was during the State's direct examination of an officer, who was asked if he could identify in the courtroom a suspicious pedestrian he saw the night of the crime. The officer replied, "It's been a long time. The only time I ever saw him was later on that night at the interview — ," at which time Medrano's attorney objected and moved for a mistrial. Lopez's counsel joined in the motion. Finding no harm in the statement, the court denied the motion, and the officer later testified that Lopez was not this man but was apprehended at another location.

Even assuming that a reference to a police interview of a defendant would prejudice that defendant, the reference to the interview here does not identify who was being interviewed or why. To the extent it implies that the interview was with the pedestrian, the officer clarified that that person was not Lopez. We fail to discern any possible prejudice to Lopez. The court did not err in denying Lopez's motion for mistrial.

The second "prejudicial" reference to an interview came during an officer's discussion of a videotaped interview he conducted with the male victim Maciel. The officer testified that the interview was confusing because of Maciel's inability to speak fluent English. He explained that the police officer fluent in Spanish "was busy interviewing another — ," at which time Medrano's attorney objected and moved for a mistrial. Lopez's attorney joined in the motion. The court found no harm and denied the motion.

Once again, the subject of the "prejudicial" interview is not identified. Indeed, the context would leave one to believe that the officer was referring to an interview with another witness or victim. The court found no basis for Lopez's claim that the officer made physical gestures pointing toward the defendants. Even under Lopez's version, no particular defendant was identified. We fail to discern any abuse of discretion in the trial court's denial of the motion for mistrial.

3. Lopez specially demurred to the two aggravated assault counts, arguing that the phrasing of the counts allowed the jury to find Lopez guilty if either of two aggravating circumstances was shown under OCGA § 16-5-21 (a). Both counts charged Lopez with making an assault upon Maciel (Count 4) and Rodriguez (Count 5) "with a handgun, a deadly weapon, by pointing the handgun at [the victim] and threatening to kill [him or her], thereby placing said person in reasonable apprehension of immediately receiving a violent injury. . . ." OCGA § 16-5-21 (a) provides in pertinent part that a person commits aggravated assault when he assaults with intent to murder *or* with a deadly weapon.

Lopez misapprehends the law. The wording of the indictment would have allowed the State to seek a conviction under either subparagraph (1) or (2) of subsection (a) of OCGA § 16-5-21, as both methods were sufficiently alleged and proven. Cf. *Cannon v. State*, 223 Ga. App. 248, 249 (2) (477 SE2d 381) (1996). Acting conservatively, however, the State chose only to pursue a conviction under subparagraph (2) (assault with a deadly weapon), and the court accordingly instructed the jury on that subsection only. Unlike the case cited by Lopez (*Hunley v. State*, 227 Ga. App. 234, 235 (1) (488 SE2d 716) (1997)), the indictment here sufficiently alleged both methods of committing aggravated assault. Also unlike *Hunley*, the court here charged the jury on only one of the methods as a basis for finding guilt. There was no fatal variance, and we discern no error.

## Case No. A03A0471

4. Medrano claims that his counsel was ineffective in failing to challenge the jury array. He argues that contrary to OCGA § 15-12-23 (a), the Clerk of the Superior Court of Gwinnett County did not serve as the clerk of the board of jury commissioners, and that the person (the court administrator) fulfilling the duties of the jury commissioner clerk failed to take the oath required by OCGA § 15-12-23 (a). Medrano contends that he accordingly was not furnished with proper jurors as required by law, and that his counsel rendered ineffective assistance in failing to investigate and raise this issue with

the court. He enumerates as error the court's ruling denying his motion for new trial on these grounds.

"To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). We review the trial court's ruling on the effectiveness of counsel as a mixed issue of law and fact. *Suggs*, supra, 272 Ga. at 88 (4). "[W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Footnote omitted.) Id.

Medrano's challenge to the trial court's ruling fails for three independent reasons. First, an objection to the jury array would have been futile. Since Medrano did not show at the motion for new trial hearing that as a result of the improper person serving as jury commissioner clerk or as a result of no proper oath being administered, the jury commissioners failed to properly enter their duties and to follow statutory guidelines in selecting the jury lists, there was no denial of due process nor violation of his right to trial by jury. *Lawson v. State*, 242 Ga. 744, 745 (1) (b) (251 SE2d 304) (1978); see *Chadwick v. State*, 176 Ga. App. 296, 297 (1) (335 SE2d 674) (1985), aff'd, 255 Ga. 376 (339 SE2d 717) (1986). Absent such evidence, the jury challenge would have been futile.

Second, Medrano argues that through oversight, his counsel failed to investigate and challenge the jury array in the trial court. Mere oversight in failing to challenge a jury array, however, does not warrant a finding of ineffective assistance of counsel. *Durham v. State*, 239 Ga. 697, 701-702 (6) (238 SE2d 334) (1977).

Third, Medrano's counsel testified that he decided as a matter of strategy not to pursue an investigation into possible improprieties in the procedures of putting together the grand jury and trial jury array. He testified that Medrano had instructed him to proceed to trial as soon as possible (he filed a speedy trial demand as a result) and that a challenge to the grand jury or trial jury array would have delayed the trial. See *Wilson v. State*, 181 Ga. App. 337, 338 (1) (352 SE2d 189) (1986) ("By challenging the jurors, [defendant] waived his right to trial during that term. [Cit.]"). A decision not to investigate particular matters (based on an effort to accommodate a client's desire for a speedy trial) is a matter of trial strategy that does not require a finding of ineffective assistance. *Roundtree v. State*, 257 Ga. App. 810, 814 (3) (572 SE2d 366) (2002).

Medrano's trial counsel further testified that the resulting reindictment may have resulted in the indictment of Medrano for the greater crime of kidnapping with bodily injury (see OCGA § 16-5-40

(b)), as evidence had developed that would have allowed for this greater crime. "[W]e will not use hindsight to judge counsel's reasonable trial strategy and tactics." (Footnote omitted.) *Braithwaite v. State*, 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002).

The trial court did not clearly err in finding that Medrano's counsel made strategic decisions, and we uphold the ruling that these decisions did not constitute deficient performance or ineffective assistance of counsel. The court therefore did not err in denying Medrano's motion for new trial.

*Judgments affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED APRIL 3, 2003.

*Stuckey & Manheimer, Stephanie S. Benfield*, for appellant (case no. A03A0470).

*Clark & Towne, Wystan B. Getz*, for appellant (case no. A03A0471).

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.

