A10A1388, A10A1389. WORTHY v. THE STATE (two cases).
(704 SE2d 808)

PHIPPS, Presiding Judge.

A Lamar County grand jury returned an indictment against Vernon Worthy for false imprisonment, aggravated assault, and pointing a gun at another. His case is before us on interlocutory appeal of the trial court's denial of several motions, as follows. Worthy, an officer with the Morehouse College Police Department, filed a motion to quash the indictment, arguing that he was denied his right as a police officer to be present and to make a statement when the evidence against him was presented to the grand jury.

---

Later, Worthy filed another motion to quash the indictment, this time challenging the racial composition of the grand jury list. Worthy subsequently filed a plea in abatement, arguing that several of the jury commissioners and the clerk of the board of jury commissioners had failed to take the proper oaths. And he filed a supplement to the plea in abatement, arguing that one of the jury commissioners was not qualified. In Case No. A10A1388, Worthy appeals from the trial court's denials of his motions to quash and the plea in abatement. In Case No. A10A1389, he appeals from the denial of his supplement to the plea in abatement. For the reasons that follow, we affirm.

## Case No. A10A1388

1. Worthy contends that the trial court erred in finding that the indictment was valid because at least one jury commissioner[1] and the clerk of the board of jury commissioners did not take and subscribe to the oaths of office required by OCGA §§ 15-12-22 and 15-12-23.

(a) *Oath of jury commissioners.*
OCGA § 15-12-22 provides:

> Jury commissioners, before entering on the discharge of their duties, shall take and subscribe before the judge of the probate court of their respective counties the following oath, which shall be entered on the minutes of the probate court:
> "You shall faithfully and impartially discharge the duty of jury commissioners for the County of _____, in accordance with the Constitution of this state, to the best of your skill and knowledge; and the deliberations and counsel of the jury commissioners, while in the discharge of their duties, you shall forever keep secret and inviolate, unless called upon to give evidence thereof in some court of justice or other legal tribunal of this state. So help you God."

The record shows that George Barrett, one of the jury commissioners serving when Worthy was indicted, did not take an oath subscribing to the exact language set forth in OCGA § 15-12-22. Specifically, Barrett's oath did not include the words, "and the deliberations and counsel of the jury commissioners."

(b) *Oath of the clerk of the board of jury commissioners.*
OCGA § 15-12-23 (a) provides, in pertinent part, that the clerk of the superior court shall serve as the clerk of the board of jury

---

[1] Worthy alleged in the plea in abatement that the oath of several jury commissioners was improper, but produced evidence as to only one jury commissioner, George Barrett.

commissioners, and that:

> Before entering upon the performance of his duties as clerk of the board [of jury commissioners], [the clerk] shall take an oath before the judge of the probate court to discharge faithfully his duties as required by law and never to divulge any of the proceedings and deliberations of the jury commissioners unless compelled to testify thereof in some court in this state.

Robert F. Abbott, the clerk of superior court, in taking the oath as clerk of the board of jury commissioners, subscribed to an oath that varied from that described in OCGA § 15-12-23 in the following respects: Instead of swearing to discharge his duties "faithfully," Abbott swore to discharge his duties "to the best of [his] skill and knowledge"; the statutory language "as required by law" was replaced by "in accordance with the Constitution of this State"; and instead of swearing to never divulge any of the proceedings and deliberations of the jury commissioners unless compelled to testify thereof in some court "in this state," Abbott swore never to do so unless compelled to testify thereof in some court "of justice or other legal tribunal of this state." In addition, Abbott took the oath before a superior court judge rather than a probate court judge. At the hearing on the motions, the court announced that new oaths would be prepared and administered by the probate court judge that day or in the near future; later in the hearing, the one jury commissioner who testified (Barrett) affirmed that he signed a corrected oath that same day.

(c) *Effect of non-compliance.* OCGA § 15-12-22 requires the taking of and subscribing to an oath containing specific language, but OCGA § 15-12-23 does not, and neither statute provides for a remedy when there has not been compliance with its provisions. For the reasons discussed below, we hold that the oath subscribed to by commissioner Barrett did not comply with OCGA § 15-12-22 and thus was not a proper oath; however, Barrett's official acts as a jury commissioner were valid.[2] And while the oath subscribed to by the clerk of the board of jury commissioners, Abbott, did not meet the requirements set out in OCGA § 15-12-23 and thus was not a proper oath, the official acts of the jury commissioners were nonetheless valid.

Generally, in deciding whether the failure of the clerk of the

---

[2] Because no evidence was presented to the trial court to support Worthy's claim that the oath taken by any other jury commissioners was also improper, that issue is abandoned.

board of jury commissioners or jury commissioners to take and subscribe to the oath of office as provided by statute constituted reversible error, our appellate courts have considered whether there was harm. For example, in *Lawson v. State*,[3] the Supreme Court of Georgia found harmless error in the taking of an improper oath by the clerk of the board of jury commissioners where the appellant did not dispute that the board of jury commissioners properly entered into its duties and followed statutory guidelines in selecting the jury lists, and there was no denial of due process or violation of the appellant's right to trial by jury.[4] Similarly, in *Lopez v. State*,[5] this Court held that a challenge to the jury array based on the clerk of the board of jury commissioners not having taken the proper oath would have lacked merit, because there was no showing that, as a result of the lack of a proper oath, the jury commissioners had failed to properly enter into their duties and to follow statutory guidelines in selecting the jury lists.[6] As discussed further in Division 2, Worthy has not shown that, as a result of improper oaths, the jury commissioners failed to properly enter into their duties or to follow statutory guidelines in selecting the jury lists.[7] Thus, the error in the clerk's oath was harmless.

Likewise, where jury commissioners took an improper oath, we held that even "if [the jury commissioners] were not de jure officers, their acts as de facto officers were not invalid. . . . [T]he official acts of an officer are none the less valid for his omission to take and file the oath, unless in cases when so specifically declared."[8] Thus, the jury commissioner's official acts were valid despite omissions in the oath as originally taken and subscribed.

The fact that Worthy made his challenge *before* trial does not distinguish this case in any meaningful way from those cited above. Even where defendants challenged before trial the clerk's or jury commissioners' ineligibility for failure to take or subscribe to a proper oath, and their unsuccessful challenges were followed by trials and convictions, our courts have held that the officials' acts were not invalid.[9] And in a case in which the appellant raised the improper oath issue after trial, we held that a pre-trial challenge to

---

[3] 242 Ga. 744 (251 SE2d 304) (1978).

[4] Id. at 744-745 (1) (b).

[5] 260 Ga. App. 713 (580 SE2d 668) (2003).

[6] Id. at 717 (4).

[7] See *Lawson*, supra; *Lopez*, supra.

[8] *Rosenblatt v. State*, 2 Ga. App. 649, 651 (58 SE 1107) (1907) (citations and punctuation omitted).

[9] See *Wright v. State*, 124 Ga. 84, 85 (52 SE 146) (1905); *Chadwick v. State*, 176 Ga. App. 296, 297 (1) (335 SE2d 674) (1985); *Rosenblatt*, supra.

the indictment based on that issue would have lacked merit absent a showing of harm.[10] Worthy has shown no basis for reversal of the denial of his plea in abatement.

2. Worthy contends that the trial court erred in finding that the indictment was valid when African-Americans were over-represented on the grand jury list by 6.429 percent in relation to the number of such persons in the community.[11] Worthy cites OCGA § 15-12-40 (a) (1), which provides that a grand jury list must contain a "fairly representative cross[-]section of the intelligent and upright citizens of the county," and he adds that his right to a representative jury is guaranteed by the Constitution of the United States.

A defendant bears the burden, under a Fourteenth Amendment equal protection claim, a Sixth Amendment fair cross-section claim, and a claim under OCGA § 15-12-40, of making a prima facie showing of under-representation of a particular group of persons.[12] In this regard, the Constitution requires only that the state not deliberately and systematically exclude identifiable and distinct groups from jury lists; hence, to prevail on a constitutional challenge to the composition of the grand or petit juries in his case, a criminal defendant must establish prima facie that a distinct and identifiable group in the community is substantially under-represented.[13] Once the defendant makes a prima facie case of discrimination, the burden of going forward then shifts to the state to explain the figures in a non-discriminatory way.[14] "A violation of OCGA § 15-12-40 is proven by showing a wide absolute disparity between the percentage of the group in the population and its percentage in the jury pool."[15] Generally speaking, an absolute disparity between the percentage of a group in the population and its percentage on the jury list of less than five percent is almost always constitutional; an absolute disparity between five and ten percent is usually constitutional; and an absolute disparity of over ten percent is probably unconstitutional.[16] The extent of under-representation is a question of fact to be determined by the trial court, and the effect of the disparity, once its extent has been determined, is a question of law; with mixed

---

[10] *Lopez*, supra.

[11] Based on the latest official United States Census (2000) data available at the time the grand jury list from which the grand jury was selected that returned Worthy's indictment was certified, African-Americans made up 28.93 percent of the over-18 population of Lamar County, and 35.36 percent of the grand jury list.

[12] *Ramirez v. State*, 276 Ga. 158, 162 (2) (575 SE2d 462) (2003).

[13] *Humphreys v. State*, 287 Ga. 63, 67 (2) (c) (694 SE2d 316) (2010).

[14] *Cochran v. State*, 155 Ga. App. 418, 420 (271 SE2d 864) (1980).

[15] *Morrow v. State*, 272 Ga. 691, 693 (1) (532 SE2d 78) (2000) (citations omitted).

[16] Id. at 692 (1).

questions of facts and law, the appellate court accepts the trial court's findings on disputed facts unless clearly erroneous, but independently applies the legal principles to the facts.[17]

Notably, Worthy's asserted error states that the indictment was invalid because the grand jury list was *over*-represented by African-Americans. It does not include a complaint of the under-representation of any group, though Worthy mentions in the argument section of his brief that Caucasians were under-represented in the pool by 4.839 percent.[18] It is clear from his enumeration of error and arguments in support thereof that Worthy's claim of error was not based on under-representation of Caucasians. Even if it had been, such an argument presents no basis for reversal because an absolute disparity of less than five percent is almost always constitutional,[19] and Worthy has shown no reason why this general rule should not apply in his case.[20]

Assuming, arguendo, that the laws pertaining to under-representation of distinctive groups on jury lists also apply to the over-representation of such groups, Worthy's argument is still without merit. The absolute disparity in over-representation on the grand jury list of 6.429 percent of African-Americans falls within a range that generally meets constitutional requirements.[21] Worthy has not met his burden of showing that this disparity violates the Constitution or OCGA § 15-12-40.[22]

Worthy's reliance on Rule II of Georgia's Unified Appeal Procedure ("UAP") is misplaced. That rule, in pertinent part, provides that significant under-representation of a cognizable group shall be corrected prior to trial, and that the difference between the group's representation on the grand jury list and its population in the county must be less than five percent.[23] But the UAP applies only in cases where the death penalty is sought,[24] and this is not such a case. Even if the rule were applicable, Worthy has not shown *under*-representation of any group by more than five percent. The trial

---

[17] *Smith v. State*, 275 Ga. 715, 720 (4) (571 SE2d 740) (2002).

[18] The grand jury that returned Worthy's indictment was selected from a grand jury list certified in February 2008. Based on the latest official United States Census (2000) data available at the time of that certification, Caucasians made up 69.48 percent of the over-18 population of Lamar County, and 64.64 percent of the grand jury list.

[19] See *Smith*, supra at 716 (1); *Morrow*, supra at 692 (1).

[20] Compare *Cochran*, supra (54 percent disparity was amply significant to authorize an inquiry into whether an opportunity for discrimination existed from the source of the jury list).

[21] See *Edwards v. State*, 281 Ga. 108, 109 (636 SE2d 508) (2006) (trial court correctly found that under-representation of cognizable group by 6.04 percent is generally not unconstitutional); *Cook v. State*, 255 Ga. 565, 571 (11) (340 SE2d 843) (1986).

[22] See *Edwards*, supra; *Morrow*, supra at 695 (1).

[23] UAP Rule II (C) (6) (b), (E).

[24] See OCGA § 17-10-36; *Sliger v. State*, 248 Ga. 316, 321 (6) (282 SE2d 291) (1981).

court did not err in denying Worthy's motion to quash the indictment based on the racial composition of the grand jury list.

3. Worthy states that he was a law enforcement officer, and that although he was off-duty at the time of the alleged crimes, he believed he was effecting a lawful arrest; thus, he claims, the crimes alleged would have been committed while in the scope of his official duties and OCGA § 17-7-52 (a) applies to this case. Therefore, Worthy contends that the trial court erred in finding that he was not entitled to be present and make a statement when the case was presented to the grand jury, and that his motion to quash the indictment on that ground was erroneously denied.

OCGA § 17-7-52 (a) provides, in pertinent part, that before an indictment is returned by a grand jury against a peace officer charged with a crime which is alleged to have occurred while he was in the performance of his duties, the officer shall be afforded the rights provided in OCGA § 45-11-4; those rights include, inter alia, being present during the presentation of evidence on the proposed indictment and making a sworn statement if desired at the conclusion of the presentation.[25]

Worthy did not testify at the hearing on the motions to quash the indictment, but counsel for Worthy made the following proffer: At the time of the charged incident, Worthy was Chief of the Morehouse College Police Department, and was P.O.S.T.-certified as a peace officer. Worthy was in Lamar County, on land he leased, tending to food plots and attempting to prevent poaching. Johnny Goodrum owned property nearby and had given Worthy permission to hunt on his land. As Worthy was leaving his leased land, he unknowingly walked onto Goodrum's land. He encountered a man who was wearing camouflage clothing and a mask, and who had a rifle. The man asked Worthy what he was doing. Worthy, who believed he was still on land he leased, identified himself as a police officer and ordered the man to put down his weapon and get on his knees. Although the man had permission to be on Goodrum's property, Worthy believed the man was trespassing on the land Worthy leased.

Worthy's attorney conceded at the hearing that Worthy "was outside his jurisdiction of Morehouse College," but stated that Worthy believed he "was carrying out his duties as a peace officer of the State of Georgia when he [placed the man] under arrest for trespassing because he had probable cause to believe that he had committed a crime in his presence."

In denying Worthy's motion to quash, the trial court specifically found, based on the facts as alleged by counsel, that Worthy was not

---

[25] OCGA § 45-11-4 (g).

performing his duties as a Morehouse College police officer when the alleged acts occurred in Lamar County, and that he was engaged instead in leisure activity. When the evidence is uncontroverted and no issues of witness credibility are presented, we review de novo the trial court's application of the law to undisputed facts.[26]

Moreover, OCGA § 17-7-52 (a) applies where a peace officer has been charged with a crime "which is alleged to have occurred while he or she was in the performance of his or her duties." The indictment did not allege that the crimes occurred while Worthy was performing his duties.

"[OCGA § 17-7-52] was intended to afford to police officers the same procedural protection afforded to other public officials as to accusations arising from the performance or non-performance of their official duties."[27] Statutes such as OCGA § 45-11-4 and OCGA § 45-15-11 (involving public officials) "are narrowly drawn and relate only to misconduct in public office."[28]

OCGA § 20-8-2 provides:

> On the campus of an educational facility, a campus policeman employed by such educational facility who is certified in accordance with Code Section 20-8-3 and when authorized by the governing body or authority of such educational facility shall have the same law enforcement powers, including the power of arrest, as a law enforcement officer of the local government with police jurisdiction over such campus.

Campus is defined, in part, as the grounds and buildings owned by the college and any public or private property within 500 yards thereof.[29] Worthy was not on campus as defined by the statute. Although Worthy states that "he had a duty to arrest a person whom he believed to be violating the law in his presence," he has cited no authority (legal, job-related, or otherwise) supporting that contention. The record does not show that Worthy's official duties as a campus police officer included the commission of the acts at issue, while he was off duty and engaged in leisure activities outside of his jurisdiction. Worthy's reliance on *State v. Allen*[30] as requiring a

---

[26] *State v. Hammang*, 249 Ga. App. 811 (549 SE2d 440) (2001).

[27] *Mize v. State*, 152 Ga. App. 190, 191 (1) (262 SE2d 492) (1979) (citing former Code Ann. § 27-706 (now OCGA § 17-7-52), § 89-9908 (now OCGA § 45-11-4), and § 40-1617 (now OCGA § 45-15-11) (citation and punctuation omitted)); see *State v. Smith*, 286 Ga. 409, 411 (688 SE2d 348) (2010).

[28] *Mize*, supra at 191-192 (1) (citation omitted).

[29] OCGA § 20-8-1 (1).

[30] 262 Ga. App. 724 (586 SE2d 378) (2003).

different result is misplaced, as the court in that case did not address the issue of whether the defendant was performing his official duties as a police officer when the charged incidents occurred (because that issue had already been decided by the trial court and was not appealed).[31] Worthy's claim of error is without merit.

## Case No. A10A1389

4. Worthy contends that the trial court erred in denying his supplement to the plea in abatement because jury commissioner Barrett: (a) admitted that he had committed election fraud and was, therefore, not a "discreet" person as required by OCGA § 15-12-20 (a), capable of selecting jurors who were "experienced, upright, and intelligent" as defined by OCGA § 15-12-60 (a); and (b) could not serve as a jury commissioner because he also served as a bailiff in superior court.

OCGA § 15-12-20 (a) provides, in pertinent part, that members of the board of jury commissioners "shall be discreet persons who are not practicing attorneys at law nor county officers." OCGA § 15-12-60 (a) provides, in pertinent part, that all citizens "who are the most experienced, upright, and intelligent persons are qualified" to serve as grand jurors. OCGA § 15-12-60 (b) provides that the following persons are incompetent to serve as grand jurors: (1) any person who holds any elective office in state or local government or has held any such office within two years preceding the time of service as a grand juror; and (2) any person who has been convicted of a felony and has not been pardoned or had his or her civil rights restored.

(a) The record shows that Barrett was reprimanded by the State Election Board and assessed a fine for assisting voters with absentee ballots and failing to sign the ballot envelopes indicating that he had provided such assistance. He signed a consent order with the State Election Board; he was not convicted of a crime.

The only case Worthy cites to support his argument that Barrett's involvement in the election fraud matter disqualified him from serving as a jury commissioner, *Bashlor v. Bacon*,[32] is distinguishable. In that mandamus action, the Court was concerned with whether jury commissioners had performed their duties as contemplated by law when they moved to exclude all members of a particular racial group from the jury lists.[33] The Court held that the

[31] Id. at 726 (1) (involving an off-duty Georgia State Patrol officer charged with offenses stemming from his response to his daughter's call for assistance).

[32] 168 Ga. 370 (147 SE 762) (1929).

[33] Id. at 374.

commissioners had acted unlawfully because the acts were not made by a quorum of qualified commissioners, and the commissioners had grossly abused their discretion in acting to exclude honorable, upright and intelligent persons from the jury lists.[34] Worthy has cited no authority that supports his position that under circumstances such as those present here a jury commissioner is "not a discreet person."

Worthy also argues that Barrett's lack of capacity to select grand jurors who meet the requirements of OCGA § 15-12-60 was demonstrated by the fact that he selected a grand juror, Eldridge Harris, who had committed election fraud. Harris was reprimanded by the State Election Board and assessed a fine for assisting voters with absentee ballots and failing to sign the ballot envelopes as required by law. Harris was never convicted (or charged with) a crime.[35] Worthy has not shown that Barrett was incapable of selecting qualified jurors.

(b) Because a bailiff is not a county officer within the meaning of OCGA § 15-12-20, Barrett was not disqualified based on that statute.[36]

In any event, even if a jury commissioner were ineligible to hold the office of jury commissioner, if he was appointed and acted therein, he was a jury commissioner de facto, and the acts of the board were valid and cannot be collaterally attacked on the grounds of his incompetence to hold that office.[37] A de facto jury commissioner's acts are not void as to the public and third parties, and they cannot be invalidated in a proceeding to which he is not a party.[38]

*Judgments affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED NOVEMBER 4, 2010 —
RECONSIDERATION DENIED DECEMBER 3, 2010.

*Smith, Welch & Brittain, Pandora E. Palmer, Katherine E. Fagan, Joseph S. Key*, for appellant.

*Richard G. Milam, District Attorney, Jason S. Johnston, Assistant District Attorney*, for appellee.

---

[34] Id. at 373-374.
[35] See *Owens v. State*, 251 Ga. 313, 319 (4) (305 SE2d 102) (1983).
[36] See *Clark v. State*, 255 Ga. 370, 374, n. 9 (338 SE2d 269) (1986).
[37] *Chadwick*, supra; see *Clark*, supra at 374.
[38] See *Wright*, supra; *Chadwick*, supra.