### S02A1769. RAMIREZ v. THE STATE.
(575 SE2d 462)

BENHAM, Justice.

Bautista Ramirez has been indicted on one count of malice murder, one count of felony murder, two counts of aggravated assault, two counts of aggravated battery, and one count of carrying a concealed weapon. The charges arise out of the fatal shooting of a Doraville police officer and the non-fatal shooting of a security guard at a nightclub. The trial court filed an order authorizing an application for interim review in this Court, and, exercising its power to order issues addressed that were not raised by the parties on application for interim review, this Court directed the parties to address the following two questions:

1. Whether the trial court erred in denying the defendant's motion to quash his indictment insofar as that motion addressed the alleged under-representation of "African-Americans" on the source list from which his grand jury was selected.
2. Whether application of the following portion of the Unified Appeal Procedure in conjunction with the remainder of the Unified Appeal Procedure is unlawful or improper either in general or in this case: "The [trial] court shall compare the percentages of each cognizable group in the county, according to the most recent official decennial census figures, with the percentages represented on the grand and traverse jury lists." U.A.P. II (C) (6).

See OCGA § 17-10-35.1 (d) (authorizing interim review of issues not raised on application for interim review); U.A.P. II (H) (1) (same). In addition to these two issues, Ramirez has raised in this interim review the trial court's alleged error in denying his motion to quash the indictment on the ground of alleged under-representation of Hispanic persons and the trial court's alleged error in certifying the grand and traverse jury source lists pursuant to the Unified Appeal Procedure. For the reasons set forth below, we find no error.

*Alleged Under-Representation of African-American Persons*

1. (a) On November 15, 2000, Ramirez filed a motion to quash his indictment, alleging the under-representation of, inter alia, African-American persons. In subsequent briefs filed in the trial court, Ramirez focused his arguments on the alleged under-representation of Hispanic persons, however, we find that the issue of the alleged under-representation of African-American persons has been preserved for review by Ramirez's original motion.

In a hearing held on October 30, 2001, an expert witness testified briefly on Ramirez's behalf regarding the percentage of persons classified as "black" in federal census reports in 1990 and 2000 as compared to the percentage of persons classified as "black" on the source list from which Ramirez's grand jurors were selected in 2000. The expert testified that the percentage of "black" persons in the county had increased by 11.9 percentage points over the time period spanning 1990 to 2000. The expert concluded that the increase in the "black" population coupled with the county's forced balancing system (whereby the percentage of "black" persons on the grand jury source list was made to correspond exactly to the percentage of "black" persons reported in the 1990 Census) created a disparity of 11.9 percentage points between the percentage of "black" persons on the 2000 grand jury source list and the actual "black" population of DeKalb County in 2000.

(b) In order to make a prima facie claim of a violation of the equal protection clause of the Fourteenth Amendment, Ramirez was required to demonstrate that African-American persons were a recognizable, distinct class of persons, that they were under-represented over a significant period of time or under other circumstances which raised an inference of discrimination, and that the selection procedure employed was susceptible of abuse or was not racially neutral such that any presumption of discrimination raised by the statistics was supported. *Castaneda v. Partida*, 430 U. S. 482, 494 (III) (97 SC 1272, 51 LE2d 498) (1977) (prima facie case demonstrated by composition of grand juries over time); *Alexander v. Louisiana*, 405 U. S. 625, 628-632 (I) (92 SC 1221, 31 LE2d 536) (1972) (prima facie case demonstrated by highly improbable outcome of grand jury selection in particular case at hand); see also *Campbell v. Louisiana*, 523 U. S. 392 (118 SC 1419, 140 LE2d 551) (1998) (holding that the defendant who was of one race had standing to raise an equal protection claim alleging the systematic exclusion from the grand jury of persons of another race). African-American persons are clearly a distinct class of persons for Fourteenth Amendment purposes, and the absolute disparity of 11.9 percentage points between their representation on the 2000 grand jury source list and their presence in DeKalb County's population in

2000 would be sufficiently high, *if considered in a vacuum*, to raise an inference of discrimination. See *Morrow v. State*, 272 Ga. 691 (1) (532 SE2d 78) (2000); *Cook v. State*, 255 Ga. 565, 571 (11) (340 SE2d 843) (1986) ("As a general proposition, absolute disparities under 10% usually are sufficient to satisfy constitutional requirements."). However, the statistical evidence should *not* be considered in a vacuum.

The evidence presented to the trial court clearly demonstrated that the jury commissioners had fixed the percentage of "black" persons on Ramirez's 2000 grand jury source list to the percentage of "black" persons in the county reported in the 1990 Census. This procedure was consistent with, and undoubtedly arose directly out of, this Court's directive in the Unified Appeal Procedure that trial courts must certify that each cognizable group is represented on grand and traverse jury source lists by a percentage that is within five percentage points of the group's percentage in the total population *as measured by "the most recent official decennial census figures. . . ."* (Emphasis supplied.) U.A.P. II (C) (6). Because the jury commissioners had obviously structured their system in compliance with the Unified Appeal Procedure, this Court, in its order granting Ramirez's application for interim review, focused the parties' attentions on the question of whether that rule was itself improper.

In *Walraven v. State*, 250 Ga. 401 (1) (297 SE2d 278) (1982), this Court previously ordered compliance with the Unified Appeal Procedure's rule of using the most recent census as a benchmark, but the Court did not address whether doing so in that particular case would entail statistical variations of the magnitude presented in this case. In *Morrow v. State*, supra, 272 Ga. at 693-695, this Court also found no abuse of a trial court's discretion in making a factual finding that the most recent census report was more reliable than more recent population reports presented in that case that were mere estimates. Since granting the application for interim review in Ramirez's case, this Court has directly addressed the pivotal issue in Ramirez's case under similar facts in *Smith v. State*, 275 Ga. 715 (571 SE2d 740) (2002) (assuming, without deciding, the existence of an underrepresentation of 12.5 percentage points). We held there that a trial court did not err in finding no equal protection violation where a defendant was indicted in 2000 by a grand jury drawn from a source list constructed to conform to the statistics of the 1990 Census and where the source list was later shown upon the release of the 2000 Census to have represented a cognizable group by 12.5 fewer percentage points than the percentage of that group in the actual population at the time of the indictment. In doing so, this Court noted the comprehensiveness of decennial census reports and the need of jury commissions to have "a valid population benchmark" by which to guide and measure their efforts at including all cognizable groups in

appropriate numbers. Id.

Because we find that the source list from which Ramirez's grand jury was drawn was constructed, in accordance with the Unified Appeal Procedure, specifically with the intent to equally represent the cognizable groups in DeKalb County as measured by the most comprehensive and objective source available at the time the list was constructed, and because the population movements in and out of DeKalb County were obviously beyond the control of the county's jury commissioners, we conclude that Ramirez has failed to show that DeKalb County's grand jury selection procedure was susceptible of abuse or was not racially neutral. See *Castaneda*, 430 U. S. at 493 (III) ("[A]n official act is not unconstitutional *solely* because it has a racially disproportionate impact." (emphasis in original)). Because Ramirez failed in his attempt to show one of the three elements of a prima facie claim of an equal protection violation regarding African-American persons, the trial court did not err in denying Ramirez's claim regarding that group.

(c) This Court has entertained fair cross-section challenges to *grand* jury source lists under the Sixth Amendment as made applicable to the states, at least to some extent, through the Fourteenth Amendment's due process clause. See, e.g., *Morrow*, 272 Ga. at 692-695 (1); but see also 4 LaFave, Israel & King, Criminal Procedure § 15.4 (d), pp. 330-331 (2nd ed. 1999). Furthermore, this Court has held, based on OCGA § 15-12-40, that a defendant is entitled, under standards comparable if not identical to federal constitutional standards, to a grand jury drawn from a source list that represents a fair cross-section of the population. *West v. State*, 252 Ga. 156 (1) (313 SE2d 67) (1984).

To make a prima facie showing of a fair cross-section violation, Ramirez was required to show the following:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group [in venires from which juries are selected] is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Morrow*, 272 Ga. at 692 (1) (citing *Duren v. Missouri*, 439 U. S. 357, 364 (II) (99 SC 664, 58 LE2d 579) (1979)). A fair cross-section jury composition claim is almost identical to an equal protection jury composition claim, including the statistical thresholds applicable, with the one prominent exception being that the claimant need not demonstrate any *intent* to under-represent a cognizable group.

*Duren*, 439 U. S. at 368, n. 26. As noted above, African-American persons are a distinctive group, and the 2000 Census showed, *in retrospect*, that African-American persons were under-represented on the 2000 grand jury source list by 11.9 percentage points. Furthermore, the procedure by which DeKalb County constructed its 2000 grand jury source list did result in the "systematic exclusion" of some African-American persons, however unintentional that exclusion actually was. Nevertheless, a prima facie showing of a fair cross-section violation can be rebutted if the State can demonstrate that "attainment of a fair cross section [is] incompatible with a significant state interest." Id. at 368 (III). As is discussed above, the DeKalb County jury commissioners constructed a grand jury list that, in accordance with the Unified Appeal Procedure, attempted and succeeded at ensuring fair representation of African-American persons as measured by the most comprehensive and objective source available, the 1990 Census. We find that obtaining that comprehensiveness and objectivity in the DeKalb County jury selection process was a sufficiently significant state interest to rebut Ramirez's prima facie fair cross-section showing regarding the representation of African-American persons.

### Alleged Under-Representation of Hispanic Persons

2. In addition to the issues ordered addressed by this Court, Ramirez has raised the claim that the trial court erred in denying his motion to quash his indictment on the ground of alleged under-representation of Hispanic persons. A defendant bears the burden, under a Fourteenth Amendment equal protection claim, a Sixth Amendment fair cross-section claim, and a claim under OCGA § 15-12-40, of making a prima facie showing of under-representation. *Morrow*, 272 Ga. at 693 (1). Not a single witness testified in the pre-trial hearings to the actual percentage of Hispanic persons appearing on the source list from which Ramirez's grand jury was drawn. The fact that the jury commissioners did not attempt tracking the number of Hispanic persons at all prior to July of 2001 and the fact of that their efforts to begin doing so were incomplete at the time of Ramirez's pre-trial hearing do not substitute for a prima facie showing that there was any *actual* under-representation of Hispanic persons. Because Ramirez failed to make a prima facie showing of *actual* under-representation of Hispanic persons, his motion to quash the indictment on constitutional and statutory grounds was properly denied.

*Jury Certification*

3. The Unified Appeal Procedure requires a trial court in a death penalty case to compare the percentages of cognizable groups on the grand and traverse jury source lists with the percentages of those groups in the population as measured by the most recently available census report, to certify that there is no "[s]ignificant under-representation" of any of those groups, and to correct any such significant under-representation. U.A.P. II (C) (6). The form provided in the Unified Appeal Procedure with which the trial court is directed to make the required certification indicates that the differences between those percentages must be less than five percentage points. U.A.P. II (E).

Ramirez complains that because the trial court found Hispanic persons to be a cognizable group, and because no witnesses who testified in the pre-trial hearings were able to testify to the actual percentage of the grand and traverse jury source lists who were Hispanic, the trial court could not have carried out its duties under the Unified Appeal Procedure. The form provided in the Unified Appeal Procedure assumes and expresses what is obvious in American jurisprudence, that the categories of "black," "white," "female," and "male" are cognizable groups. Although the Unified Appeal Procedure offers criminal defendants the opportunity to urge the trial court to expand the list of cognizable groups, it also places the burden, in accordance with the constitutional principles discussed above, *on the defendant* to show that the additional group or groups in question are indeed cognizable. U.A.P. II (C) (6). We find that a defendant, who succeeds in carrying the burden of showing the existence of an additional cognizable group, then also must carry the burden of making a prima facie statistical showing of actual under-representation of that additional group. Therefore, where, as here, the grand and traverse jury source lists prepared by the jury commissioners do not include data sufficient to allow a direct comparison of percentages by the trial court and the defendant has failed to provide such data himself or herself through admissible evidence, we hold that a trial court fully executes its duties under the Unified Appeal Procedure in concluding from the absence of evidence to the contrary that no significant under-representation has occurred.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 13, 2003 —
RECONSIDERATION DENIED FEBRUARY 7, 2003.

*Thomas M. West, Dwight L. Thomas, Keith E. Adams, Robert H.*

*Citronberg*, for appellant.

*J. Tom Morgan, District Attorney, Mike McDaniel, Assistant District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General*, for appellee.