S06A0663. INMAN v. THE STATE.

(635 SE2d 125)

BENHAM, Justice.

Devonia Tyrone Inman appeals his convictions for the 1998 malice murder and armed robbery of Donna Brown, the manager of a fast-food restaurant in Adel, Georgia; the theft by taking the victim's car; and the possession of a firearm by a convicted felon.[1]

---

[1] The crimes took place on September 19, 1998, and appellant was arrested within a week. On January 11, 1999, the Cook County grand jury returned a true bill of indictment charging appellant with malice murder, armed robbery, theft by taking, possession of a firearm during the commission of murder, and possession of a firearm by a convicted felon. The State filed its notice of intent to seek the death penalty on January 27, 2000, and the guilt-innocence phase of appellant's trial commenced on June 11, 2001. It concluded on June 25 with the jury's return of its guilty verdicts, and the sentencing phase of the trial began. On June 26, the jury returned a finding of a statutory aggravating circumstance and fixed the sentence as life imprisonment without the possibility of parole. Appellant's motion for new trial was timely filed on July 23, 2001, and was amended May 3, 2004, and April 4, 2005. The order denying the amended motion for new trial was filed October 12, 2005, and appellant's timely notice of appeal was filed

1. The State presented evidence that Ms. Brown was found with a fatal gunshot wound to the head in the parking lot of the fast-food restaurant she managed. Restaurant receipts of approximately $1,700 were missing, as was Ms. Brown's automobile. The vegetation in nearby shrubbery was matted down and one of the two restaurant employees who closed the restaurant at 12:30 a.m. told GBI investigators she had been frightened that night by a voice emanating from the shrubbery while she waited in the restaurant parking lot for her ride home. She said she had recognized the voice as that of appellant and described the speaker as bald and wearing a white tank top.[2]

Shortly after the victim was found, her car was discovered in the parking lot of a nearby abandoned fast-food restaurant. The car had been damaged by being driven under the chain that was draped across the parking lot's entrance. A newspaper carrier who had been near the abandoned restaurant awaiting the arrival of her papers testified she saw the victim's car between 1:00-1:30 a.m. being driven at a rate of speed that caused it to fishtail. She identified appellant as the driver in a pre-trial photo lineup and at trial, and testified he was wearing a white tank-top shirt and dark pants and drove the car under the chain into the parking lot where it was found. The witness testified that a car in which an African-American woman with short blond hair was a passenger followed appellant and picked him up from the parking lot.

Appellant's girlfriend's sister, an African-American woman with short blond hair, testified she had told the GBI appellant had talked with her about robbing stores and had wanted her to accompany him to the fast-food restaurant that was the scene of the crime. She said he had a black gun with tape on its handle and was wearing a white "muscle" t-shirt and dark pants when he left her sister's apartment around midnight the night the victim was killed.[3] Another witness testified appellant had come into his house pointing a black-handled revolver with tape on it about ten days before the victim was killed.

A former cellmate of appellant testified that, in January 1999, the witness notified prison authorities that appellant had told him appellant and his girlfriend's sister had talked about robbing the Adel fast-food restaurant and had hidden in the bushes while waiting for the victim. They tried to grab the deposit bag from the victim as she

October 26. The appeal was docketed in this Court on December 20, 2005, and oral argument was heard on April 25, 2006.

[2] At trial, this witness testified she had lied when she had stated she recognized the voice as that of appellant.

[3] At trial, the witness testified she had been under the influence of marijuana, cocaine, and alcohol when she made the statement. The GBI agent who took the statement testified the witness had exhibited no signs of drug or alcohol use when she made her statement.

entered her car, but she resisted and appellant shot her with a .44 caliber revolver when she screamed. The medical examiner testified the victim had been shot as she lay on the ground, with the barrel of the gun approximately one foot from her head when it was fired. A forensic scientist testified the bullet recovered from the victim's body had been fired from a Charter Arms "Bulldog 44," a .44-special caliber revolver. The State also established that appellant was a convicted felon at the time of the crimes, having pled guilty to making terroristic threats and acts in 1995.

The evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of malice murder, armed robbery, theft by taking of the automobile, and possession of a firearm by a convicted felon. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Relying on this Court's decision in *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005), appellant contends the trial court committed reversible error by charging the jury that the level of certainty demonstrated by an eyewitness in his or her identification of a defendant is a factor the jury may consider in evaluating the reliability of the eyewitness. The record reflects appellant requested the trial court give the charge he now asserts to be erroneous. "The act of requesting an instruction in the trial court constitutes a specific waiver of the right to enumerate it as error on appeal. [Cit.] Because [appellant] induced the giving of the charge below, he is precluded from attacking it now. [Cit.]" *DeLoach v. State*, 272 Ga. 890, 892 (2) (536 SE2d 153) (2000).

3. The trial court permitted the State to present evidence of several bad acts previously committed by appellant, who contends on appeal that the admission of the evidence constitutes reversible error.

(a) The State presented a certified copy of a 1994 adjudication sustaining a petition in a California juvenile court that accused appellant of robbery. In an effort to establish the similarity between that California robbery and the crimes for which appellant was on trial in Georgia, the State presented the testimony of two California police officers who had been involved in the resolution of the California case. The investigating officer testified as to what the victim had told him about the robbery seven minutes after the robbery took place, including the fact that he had recognized one of the perpetrators (appellant) from school; the other officer responded affirmatively when asked whether the victim had picked appellant out of a lineup, though the officer was not present at the lineup. On appeal, appellant contends reversible error was committed when the police officers

were permitted to give hearsay testimony with regard to what the California robbery victim had said during the investigation of the robbery.[4]

A law enforcement officer's testimony at trial[5] concerning the similarity of a prior offense is inadmissible hearsay when the officer does not have personal knowledge of the facts of the prior offense. *Bowdry v. State*, 211 Ga. App. 626 (440 SE2d 59) (1994).[6] However, hearsay is admissible in the presentation of similar transaction evidence when it falls within a recognized exception to the hearsay rule. See, e.g., *Brite v. State*, 278 Ga. 893 (3) (608 SE2d 204) (2005) (eyewitness's statement to police regarding a similar transaction admissible under necessity exception). Likewise, similar transaction hearsay which does not fall within a recognized exception has been ruled inadmissible on appeal. *Brown v. State*, 274 Ga. 31 (1) (549 SE2d 107) (2001) (narrative portion of police report of similar transaction did not qualify as a business record exception to the hearsay rule); *Cartwright v. State*, 242 Ga. App. 825 (1) (b) (531 SE2d 399) (2000) (error to admit officer's testimony recounting statement of victim of similar transaction where requirements of the exception for statements within the res gestae were not met).

In the case at bar, the officer's testimony was admitted under the res gestae exception. OCGA § 24-3-3 states that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." A trial court's determination that evidence is admissible as part of the res gestae will not be disturbed unless clearly erroneous. *Patel v. State*, 278 Ga. 403 (2) (603 SE2d 237) (2004). A victim's statement made within minutes of a crime and to an officer responding to his call for help is admissible under the res gestae exception. *Spears v. State*, 259 Ga. App. 803 (2) (578 SE2d 504) (2003). Accordingly, it cannot be said the trial court was clearly erroneous in admitting the testimony in question.[7]

---

[4] The victim of the 1994 robbery did not testify and the law enforcement witness was not present when the victim identified appellant as one of the robbers.

[5] The Court of Appeals has ruled that a police officer's hearsay testimony about a similar transaction is admissible at the hearing required by *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991) on the admissibility of the similar transaction. *Parker v. State*, 244 Ga. App. 419 (3) (535 SE2d 795) (2000).

[6] What an investigating officer saw during her investigation of the prior offense and what the defendant told her during that investigation is not hearsay and is admissible at trial. *Williams v. State*, 269 Ga. 827 (3) (504 SE2d 441) (1998); *Terry v. State*, 262 Ga. App. 654, 655 (586 SE2d 357) (2003). See also *Castellon v. State*, 240 Ga. App. 85 (1) (522 SE2d 568) (1999) (testimony of investigating officer concerning the officer's personal knowledge of the crimes the officer investigated is not hearsay).

[7] Because appellant did not contend at trial that his constitutional right to confront witnesses was abridged by the admission of the hearsay, we do not address whether the U. S.

The second officer's testimony that the California robbery victim had picked appellant from a lineup prompted a hearsay objection from defense counsel because the testifying officer had not attended the lineup identification. Assuming without deciding it was error to fail to sustain the hearsay objection, the error was rendered harmless due to the fact the hearsay identification was cumulative of the certified copy of the adjudication adverse to appellant on the robbery charge. See *Gay v. State*, 279 Ga. 180, 182 (611 SE2d 31) (2005).

(b) The State also called as a witness a California deputy sheriff who testified appellant had been arrested and charged with possession of cocaine with intent to distribute in May 1998 when he was a passenger in an automobile in which rock cocaine was found under the passenger seat. The trial court admitted the testimony as tending to show appellant's motive for committing the crimes for which he was being tried, i.e., his need to acquire funds to become involved in the illegal drug trade in Adel. " 'While motive is not an essential element in the proof of the crime of murder, the State is entitled to present evidence to establish that there was a motive (and) evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue. (Cit.)' [Cit.]" *Morgan v. State*, 276 Ga. 72, 76 (6) (575 SE2d 468) (2003). Consequently, the trial court did not err in permitting the testimony.

(c) Lastly, appellant complains of the admission of a certified copy of his 1997 California conviction for possession of a stolen automobile. The car's owner testified her vehicle had been taken from the parking lot near her workplace while she was at work. The State presented this evidence as similar transaction evidence inasmuch as the vehicle owned by the victim in the case at bar was taken from the parking lot of her workplace. However, the State did not establish that appellant had taken the California car, only that he was found driving it several hours after it was reported stolen, and we do not see the similarity between being in possession of a car stolen, unbeknownst to the owner, from a parking lot during daylight hours, and the charge of taking a car during the middle of the night after inflicting deadly violence on the owner. However, since it is highly probable the admission of this evidence did not contribute to the jury's verdict in light of the eyewitness identification of appellant as the perpetrator of the crimes against Ms. Brown, we conclude the error was harmless beyond a reasonable doubt. *White v. State*, 269 Ga. 74 (2) (495 SE2d 278) (1998).

---

Supreme Court's decisions in *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), and *Davis v. Washington*, ___ U. S. ___ (126 SC 2266, 165 LE2d 224) (2006), apply to hearsay testimony offered regarding similar transaction evidence. *Brite v. State*, supra at 895, n. 3.

4. Appellant contends the trial court violated his right to a fair trial guaranteed him by the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it did not permit appellant to present hearsay testimony that Hercules Brown, a man indicted for murder and armed robbery of a convenience store, had told third parties he had committed the offenses for which appellant was being tried. Mr. Brown was not called to testify on the representation of defense counsel that Brown had told him he would assert his Fifth Amendment privilege not to incriminate himself if he were called. Outside the presence of the jury, defense counsel summarized the hearsay evidence he expected to present: appellant's girlfriend's sister, who had been called by the State as a witness, would testify that Brown, while smoking marijuana with her, told her he had killed the victim, and a cousin of appellant who was a former employee of the fast-food restaurant managed by the victim would testify that she refused Brown's solicitation of her help in robbing the restaurant while she was employed there.[8] Also proffered was the testimony of a prison inmate who testified that Brown, a life-long friend, had approached him at a carwash in December 1998 and told him he had robbed and shot the victim; when this witness was cross-examined concerning the crime to which he pled guilty and was serving a sentence, the witness denied that the conduct which resulted in his incarceration was criminal. Noting the witness's unwillingness to "come clean," the trial court ruled it saw no persuasive indicia of reliability in the proffered testimony and declined to permit appellant to present it to the jury.

Hearsay evidence of another person's inculpatory statements regarding commission of the crimes for which the defendant is being tried is generally inadmissible, but is admissible in exceptional circumstances, i.e., when the hearsay bears "persuasive assurances of trustworthiness" and is critical to the defense. *Turner v. State*, 267 Ga. 149, 154 (3) (476 SE2d 252) (1996). Exclusion of hearsay testimony that meets the exceptional circumstances test violates traditional and fundamental standards of due process. *Chambers v. Mississippi*, 410 U. S. 284, 302 (93 SC 1038, 35 LE2d 297) (1973). After hearing the proffer, the trial court determined the testimony did not fall within the exceptional circumstances that would authorize its admission because it contained no persuasive assurances of trustworthiness. After reviewing the record, we conclude the trial court did not err when it excluded the proffered evidence. See *Drane v. State*, 271 Ga. 849 (2) (523 SE2d 301) (1999).

---

[8] There was no suggestion that Brown told this proffered witness he had robbed and killed the victim.

5. The Unified Appeal Procedure requires the trial court in a case in which the death penalty is sought to compare the percentages of cognizable groups on the grand and traverse jury source lists with the percentages of those groups in the population as measured by the most recent available census report; to certify there is no significant under-representation of any of those groups; and to correct any such significant under-representation. U.A.P. II (C) (6); *Ramirez v. State,* 276 Ga. 158 (3) (575 SE2d 462) (2003). In the case at bar, the trial court used the 1990 census report in May 2001, made the comparison, and certified that the comparison resulted in deviations of less than five percent in the areas of race and gender for persons age 18 and over. Appellant contends the trial court committed reversible error in its use of the 1990 census report instead of the 2000 census report.[9] However, appellant has presented no evidence that the 2000 census report was available to the Cook County trial court in May 2001, but instead relies only on the supposition the 2000 report was available in Cook County in May 2001 because it was used in Hall County in March 2001. See *Smith v. State,* 275 Ga. 715, 717 (571 SE2d 740) (2002). Furthermore, even if we were to assume the 2000 report was available in Cook County in May 2001, appellant has not shown any harm he suffered from the use of the 1990 report rather than the 2000 report, i.e., he has not shown the comparison using the 2000 report would have yielded a different result than the result the trial court reached using the 1990 report. In order to have reversible error, there must be harm as well as error (*Shadron v. State,* 275 Ga. 767 (5) (573 SE2d 73) (2002)), and the lack of evidence of both error and harm renders the enumeration of error meritless.

6. During the second week of the trial, defense counsel reported that three witnesses, one of whom had been called by the State and all of whom were going to testify for the defense, had recognized a juror as a man they knew. During voir dire, the juror had not responded when the panel was asked whether they knew any of the proposed witnesses whose names were read to them. When, upon judicial inquiry, the juror acknowledged he knew the women, the trial court removed him from the jury after finding his prior relationship with the witnesses could substantially impair his ability to be a fair and impartial juror who followed the court's instructions. No finding

---

[9] We do not endorse the State's suggestion that the issue is moot since appellant was not sentenced to death. Appellant's sentence of life imprisonment without the possibility of parole was given as an alternative to the death penalty pursuant to OCGA § 17-10-31.1, which permits imposition of such a sentence when the death penalty is sought. The Unified Appeal Procedure, peculiar to cases in which the death penalty is sought, is therefore integral when a sentence of life imprisonment without the possibility of parole is imposed in lieu of a sentence imposing the death penalty.

was made as to whether the dismissed juror's "false silence" (*Martin v. State*, 168 Ga. App. 623, 625 (2) (309 SE2d 899) (1983)) was intentional or inadvertent. The trial court replaced the dismissed juror with an alternate juror (see OCGA § 15-12-172) and conducted individual voir dire sessions with each juror, ascertaining thereby that the dismissed juror had said or done nothing to influence the remaining jurors' ability to be fair and impartial. On appeal, appellant contends he is entitled to a new trial on the ground that the dismissed juror allegedly committed perjury during voir dire because he did not reveal his relationship with the women when their names were called as potential witnesses.

The Sixth Amendment right to a jury trial guarantees a criminal defendant the right to a trial by an impartial jury (U. S. Const., Amend. VI), and "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U. S. 209, 217 (102 SC 940, 71 LE2d 78) (1982). Voir dire examination of potential jurors protects the right to an impartial jury by exposing a venire member's possible biases, and potential jurors have a duty to respond fully and truthfully to voir dire questions. See Note, "Satisfying the Appearance of Justice When a Juror's Intentional Nondisclosure of Material Information Comes to Light," 35 U. Mem. L. Rev. 315, 325 (2005). "In order for a defendant to secure a new trial because a juror did not give a correct response to a question posed on voir dire . . . , the defendant must show that the juror failed to answer the question truthfully and that a correct response would have been a valid basis for a challenge for cause. [Cits.]" *Sears v. State*, 270 Ga. 834, 840 (2) (514 SE2d 426) (1999). In the case at bar, the dismissed juror did not participate in the jury's verdicts and the ever-watchful trial judge, by conducting individual voir dire of the jurors who did return the guilty verdicts, determined the dismissed juror had no effect on the jury during his short-lived presence since each juror stated the dismissed juror had not said or done anything to influence adversely their ability to be fair and impartial. Accordingly, appellant is not entitled to a new trial on the ground that the dismissed juror was untruthful on a material issue during voir dire.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 18, 2006 —
RECONSIDERATION DENIED OCTOBER 16, 2006.

*August F. Siemon III*, for appellant.

*Catherine H. Helms, District Attorney, Kimberly L. Whiddon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.