S06A1091. EDWARDS v. THE STATE.
(636 SE2d 508)

HINES, Justice.

Joseph Alan Edwards has been charged with murder and related crimes in connection with the death of his wife, Jamie September Edwards, and the State has given notice of its intent to seek the death penalty. The trial court initiated a review of pre-trial proceedings, and this Court directed the parties to address on interim review whether the trial court erred in its order regarding Edwards's challenge to the composition of the list from which his grand jury was selected. For the reasons set forth below, this Court affirms the trial court's order denying Edwards's motion to quash his current indictment.

Edwards filed a pre-trial motion challenging the composition of both the grand and traverse jury lists of Hall County. At a hearing of the motion, Edwards presented testimony showing that the jury commission had undertaken efforts to construct a grand jury list representing a fair cross-section of the county's residents who were eligible to serve as jurors. Those efforts began when the judge currently presiding over this case found in another death penalty case that Hispanic persons comprised a cognizable group for jury composition purposes and that Hispanic persons were under-represented on Hall County's jury lists. The jury commission's efforts were further shaped by this Court's interim review opinion in that case, wherein this Court affirmed the trial court's finding that Hispanic persons were a cognizable group, but concluded that the defendant did not show a legally-significant under-representation of Hispanic *citizens. Smith v. State*, 275 Ga. 715, 720-723 (4) (571 SE2d

740) (2002). The jury commission's efforts included the distribution of more than ten thousand questionnaires to persons thought to be Hispanic, including persons classified as "other" on the jury source list (a list comprised of a combination of voter registration and driver's license records), persons with Hispanic surnames in the telephone book, and parents of Hispanic schoolchildren. The goal of the distributed questionnaire was to identify Hispanic persons who were *citizens* so that appropriate numbers of them could be placed on the jury lists.

The trial court found that, while the jury commission had used the proper number of Hispanic *citizens* in its calculations, it had failed to make other adjustments based on citizenship data, including adjusting the total population of *all* persons based on citizenship. The net effect of these errors, according to the trial court, was an under-representation of white persons on the grand jury list by 6.04 percentage points. The State has not contested this finding of fact on appeal.

The trial court correctly found that an under-representation of a cognizable group by 6.04 percentage points is generally not unconstitutional, and Edwards has not argued in this appeal that the composition of his grand jury list was unconstitutional. See *Ramirez v. State*, 276 Ga. 158, 159-160 (1) (b) (575 SE2d 462) (2003); *Morrow v. State*, 272 Ga. 691, 692-693 (1) (532 SE2d 78) (2000); *Cook v. State*, 255 Ga. 565, 571 (11) (340 SE2d 843) (1986) ("As a general proposition, absolute disparities under 10% usually are sufficient to satisfy constitutional requirements."). However, the Unified Appeal Procedure ("U.A.P.") sets the limit for under-representation of a cognizable group at five percentage points, and it presumes that white persons are a cognizable group. *Ramirez*, 276 Ga. at 163 (3). The U.A.P. requires trial courts to "review the grand and traverse jury lists to determine whether all the cognizable groups in that county are fairly represented." U.A.P. II (C) (6). It further provides that "[s]ignificant under-representation of any such group on either jury list shall be corrected prior to trial." U.A.P. II (C) (6) (b). Although these provisions do not specify what exact degree of under-representation is permissible, the forms provided in the U.A.P. for the trial courts to certify the grand and traverse jury lists state that "the difference" between the percentage of a cognizable group in the county's population and the percentage of that group on the grand and traverse jury lists "must be less than 5%." U.A.P. II (E). The 6.04 percentage point under-representation of white persons on the grand jury list from which Edwards's grand jury was selected obviously violates this five percent standard.

This Court has stated that the U.A.P.'s five percentage point limit "is a prophylactic rule designed to ensure 'to the extent possible

that disparities would be kept well below the constitutional minimum.' " *Morrow,* 272 Ga. at 693 (1) (quoting *Parks v. State,* 254 Ga. 403, 408-409, n. 4 (330 SE2d 686) (1985)). However, despite being prophylactic in nature, the U.A.P. is clear in its mandate to the trial courts that "[s]ignificant under-representation of any [cognizable] group on either jury list *shall be corrected prior to trial.*" (Emphasis supplied.) U.A.P. II (C) (6) (b). Because there is no other way to correct the under-representation of white persons on Edwards's grand jury list, the trial court would have to quash Edwards's indictment in order to comply with the U.A.P. However, we conclude that requiring the quashing of Edwards's indictment would exceed this Court's constitutional power.

The U.A.P. was promulgated, at least in part, pursuant to OCGA § 17-10-36, which directs this Court to establish rules governing "the presentation to the sentencing court and [this] Court of all possible" appealable issues and to establish "check lists . . . to make certain that all possible matters which could be raised in defense have been considered by the defendant and defense counsel. . . ." OCGA § 17-10-36 (a), (b). The five percentage point rule was added to the U.A.P. in 1984, and the superior courts have labored faithfully since then to carry out that mandate by this Court. See 252 Ga. A-13, A-17. The U.A.P. is also contained in the Uniform Superior Court Rules, see USCR 34, the current version of which includes the recognition that those rules were promulgated "[p]ursuant to the inherent powers of the Court and Article VI, Section IX, Paragraph I of the Georgia Constitution of 1983. . . ." USCR 1; 256 Ga. 863-865. See also *Jones v. Jones,* 256 Ga. 185 (345 SE2d 605) (1986). The Georgia Constitution, as is cited by the Uniform Superior Court Rules, empowers and requires this Court to promulgate "uniform court rules and record-keeping rules which shall provide for the speedy, efficient, and inexpensive resolution of disputes and prosecutions." 1983 Ga. Const., Art. VI, Sec. IX, Par. I. Noticeably absent from this constitutional provision and from OCGA § 17-10-36 is anything that would give this Court the power to abrogate or interfere with an otherwise-valid statutory enactment, such as the statutory procedure by which prosecutors procure indictments and conduct criminal prosecutions through them. Accordingly, this Court concludes that requiring the quashing of Edwards's indictment, which has been procured in a manner consistent with the constitutions of Georgia and the United States and consistent with Georgia statutory law, is beyond this Court's power. The trial court's decision not to quash Edwards's indictment, therefore, is affirmed.

This Court is not here presented with the question of whether requiring pre-trial the reformation of the traverse jury list to conform with the U.A.P.'s five percentage point rule is likewise beyond this

Court's constitutional power, and, therefore, the Court expresses no opinion on that question.

*Judgment affirmed. All the Justices concur, except Benham, J., who concurs in the judgment only.*

MELTON, Justice, concurring.

I write separately to emphasize that the Uniform Superior Court Rules, of which the Unified Appeal Procedure (U.A.P.) is Rule 34, must be read in conjunction with substantive law, and, if a conflict occurs, the Rules must yield to substantive law. *Russell v. Russell*, 257 Ga. 177 (356 SE2d 884) (1987). In this case, the U.A.P. checklist states that the final calculation of any disparity in a given cognizable group "must be less than 5%." However, our substantive constitutional law provides that "[a]s a general proposition, absolute disparities under 10% usually are sufficient to satisfy constitutional requirements." *Cook v. State*, 255 Ga. 565, 571 (11) (340 SE2d 843) (1986). Furthermore, this Court has no inherent rule-making authority to create substantive legal standards that either supplement or contradict existing substantive law. The five percent requirement of the U.A.P. checklist directly conflicts with well-settled substantive law, and, as a result, the substantive law controls. Therefore, because the defendant in this case was not constitutionally entitled to an absolute disparity of less than five percent and did not otherwise shoulder his burden of supporting his due process and equal protection challenges to the composition of the grand jury, the trial court properly denied his motion to quash the indictment.

I am authorized to state that Justice Carley and Justice Thompson join in this concurrence.

DECIDED OCTOBER 16, 2006.

*Whelchel & Dunlap, Thomas M. Cole, Daniel J. Sammons*, for appellant.

*Lee Darragh, District Attorney, Alison W. Toller, Juliet Aldridge, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General*, for appellee.